[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for a declaratory judgement and an injunction. The plaintiffs, who are homeowners in a residential development known as Vernwood Farms Section B in the Town of Vernon, Connecticut, are seeking a declaratory judgement to determine whether certain restrictive covenants relating to Vernwood Farms Section B are applicable to and enforceable against a parcel of land owned by the defendant. The plaintiffs further seek an injunction to prevent the defendant from constructing a commercial building on said parcel of land.
The defendant denies that the restrictive covenants are applicable to the parcel of land in question and has filed five special defenses claiming: (1) the Declaration of Restrictions has been abandonment or rendered unenforceable due to a change in the nature and character of the neighborhood, including the defendant's property having been resubdivided and rezoned; (2) the Declaration of Restrictions has been abandoned or rendered null and void due to waiver, estoppel and/or acquiescence to the nonresidential use of the property; (3) the Statute of limitations has expired; (4) the named plaintiffs are not the real parties in interest; (5) Latches.
Pursuant to an order of the court, all Vernwood Farms Section B property owners were given notice of the pendency of this matter, and were given an opportunity to join as parties in the case. After carefully considering all of the evidence, the court finds the following facts to have been proven.
In 1959 Anton Brown, Jr. purchased and subdivided a tract of land located in a residential zoned area bordering Route 30 in the Town of Vernon to be known as Vernwood Farms Section B. As originally created, this development consisted of building lots numbered 47 through 102, as shown on a map entitled: "Verwood Farms Section `B' Vernon Connecticut Anton Brown, Jr. — Owner and Developer Scale 1" = 80' Everett O. Gardner R.L.S. 4395 October 6, 1959 Rockville, Connecticut.". (Exhibit 2) Shortly thereafter, Brown placed a Declaration of Restrictions on the Vernon land records containing restrictive covenants which encumbered Lots 47 through 102 of the Vernwood Farms Section B development. (Exhibit CT Page 12382 3). The restriction germane to this case reads:
 "All of said above lots shall be known and described as residential lots. No structures shall be erected, altered, placed, or permitted to remain on any of the said above-described lots other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than (2) cars."
It is clear from a plain reading of the Declaration of Restrictions that Brown intended to construct residential houses on each of the lots numbered 47 through 102 under a uniform plan of development. However, it is also clear that he provided for possible changes regarding the lots in the plan of development, and that he intended the restrictions to apply only to those lots which were to be part of the tract constituting the Vernwood Farms Section B.
 ". . . all lots hereinbefore mentioned as appearing on said map, or which may hereafter appear on any revision of said map, and which shall form a part of said tract, shall hereafter be subject to the . . . covenants and restrictions . . ." emphasis added. (Exhibit 3).
In 1961-1962 Brown sold the property to Vermides, Inc. in the person of Anthony V. Tantillo (Exhibits 4 and 28). Thereafter, also in 1962, Vernwood Farms Subdivision Section B was resubdivided. The revised resubdivision maps filed with the Town of Vernon deleted Lots 47 through 51 from the original Vernwood Farms Subdivision B tract. (Exhibits G and H) As a result, Lots 47 through 51 (hereinafter the "property") ceased to exist as individual building lots and became part a parcel of land designated as "Other Land of Vernwood Farms." (Exhibit 2) Since the date of the resubdivision no reference to individual building lots 47, 48, 49, 50, and 51 is contained in any recorded deed transferring ownership of said parcel of property. (Exhibits 9-18).
The evidence shows that when the Vernwood Subdivision B was created, and the restrictive covenants were adopted, the entire area was undeveloped and zoned as a residential area. In 1962 the land along Route 30, including the parcel of land which had been Lots 47 through 51, was rezoned for commercial use. (Exhibit I) Since that time the area of Route 30 adjacent to the property has been extensively developed for commercial use. CT Page 12383
Over the years residential houses have been built on Lots 52 through 102 in conformity with the Declaration of Restrictions. However, the disputed property was never developed for residential use. Instead, during the mid-1960's, a motel, swimming pool and restaurant were built on land immediately adjacent to the disputed property, and a lighted, paved, marked parking lot for use by motel and restaurant customers was constructed on the property itself. Most of the property in question has been used exclusively for commercial related purposes (parking) for more than thirty years. The plaintiffs testified that they have been aware of the existence of the parking lot for more than 30 years.
The plaintiffs' Catherine Anniello, George Kern, Richard Arcoleo, Doris Boyle, and George Russell are all homeowners within the Vernwood Farms Section B residential development. In 1986 the defendant, Donald Fish, purchased a parcel of land beginning at the Western corner of Merline Road and Route 30 and continuing Westerly along the northern side of Route 30. This purchase included the parcel of land previously designated as Lots 47 through 51.
On December 23, 1992, Fish filed a special permit and site plan application with the Town of Vernon Zoning and Planning Commission seeking permission to construct a building for a pharmacy on the property. Notice of the proposal was published in the Journal Inquirer on January 16, 1993 and a public hearing was held on January 21, 1993. Several of the named plaintiffs objected to the construction of the proposed commercial building at the public hearing. In April 1993 the Commission approved the application; however, the proposed pharmacy was never constructed on the site. According to the defendant, while he wishes to commercially develop the property, there currently is no plan to build a pharmacy on the land.
The named plaintiffs have been partially subsidized in bringing this action in the amount of $10,000 by the owners of the Vernon Drug. The current owner of Vernon Drug, Brian Gresh, testified that he agreed to financially assist the plaintiffs for two reasons. First because the new proposed pharmacy would generate unwanted competition. Second because to do so would foster good business relations with his customers. The plaintiffs testified that they were not bringing this action on behalf of the Vernon Drug and that if they had the money to do so they would have brought this action independent of Mr. Gresh. The court finds this testimony to be credible. CT Page 12384
On September 15, 1998, at the request of the parties, and after granting a defense motion to view the property, the court visited the parcel of land which is the subject of this action. The immediate impression of the court upon viewing the area is that the property in question is completely separated, both physically and by use, from the residential subdivision known as Vernwood Farms Section B. Physically, the disputed property does not appear to have ever been a part of the residential subdivision.
The portion of Route 30 which forms the southern border of the disputed property is heavily developed with commercial establishments. For example, immediately adjacent to and on the west and northwest side of the parking lot is a diner and a Howard Johnson Motel. An inground swimming pool is located to the east of the motel. Immediately to the west of the motel is a gas station, a branch of the Savings Bank of Manchester and a Comfort Inn. On the south side of Route 30, across from the diner and the motel are two gas stations. Additionally, there are several strip malls and numerous other commercial businesses on Route 30 in the immediate area.
Approximately one half of the disputed parcel consists of a large, paved parking lot which is lighted by means of lights located on high metal poles around the perimeter of the parking lot. The northern boundary of the property abuts a tree line that marks the southern boundary of the houses built within Vernwood Farms Section B. There is an in-ground swimming pool next to the motel. A 1967 aerial photograph of the area (Exhibit S) shows the swimming pool to the east of the motel and to the north of the parking lot. When comparing this photograph with maps and plans of the area (Exhibits G, 2, and 20) the court finds that more likely than not that a portion of the swimming pool was built on the disputed property.
The residential development in which the plaintiffs live is to the north of the parking lot. There is a buffer of thick vegetation consisting of large trees and brush which the court estimated to be from 50 to 75 feet wide that separates the motel, parking lot and swimming pool area from the residential development. The houses could not be seen from the parking lot nor could the parking lot and commercial buildings be seen from the residential area. This observation is consistent with the testimony of the plaintiffs that they could not see the motel and restaurant from their property. CT Page 12385
 Findings of the Court
"The meaning and effect of the [restrictions] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . ." (Internal citations omitted) Contegni v.Payne, 18 Conn. App. 47, 52 (1989) In this case the expressed intent of Anton Brown, Jr. is clear and unambiguous. "[I]n orderto create a uniform plan of development . . . all lotshereinbefore mentioned as appearing on said map, or which mayhereafter appear on any revision of said map, and which shallform a part of said tract, shall hereafter be subject to thefollowing covenants and restrictions . . ." (Exhibit 3) The stated intent was that the Declaration of Restrictions were to be applicable to the residential building lots appearing on theoriginal subdivision map, or on any revision of that map,which were part of the residential development tract.
When Vernwood Farms Section B was resubdivided in 1962, Lots47-51 were deleted from the Section B tract and ceased to exist as individual building lots. Thereafter, Lots 47-51 became a part of what was designated on the map as "other land of Vernwood Farms."[1] (Exhibits G and H) Once Lots 47-51 ceased to exist as individual residential building lots, and were no longer included within the Vernwood Farms Section B tract as shown on the revised resubdivision map, said lots were no longer subject to the Declaration of Restrictions. That contingency is exactly what Anton Brown, Jr. provided for in his Declaration of Restrictions.
It is clear that the nature and use of the tract of land in which the residential development is located has not significantly changed over the years. It is also abundantly clear that the nature and use of the disputed property itself as well as the area in which the property is located have significantly changed over the past three decades. The portion of Route 30 on which the property is located has changed from an underdeveloped rural area to an active commercial area. In addition to this parcel being physically separated from the Vernwood Farms Section B residential development, it was rezoned from residential to commercial more than 30 years ago and has been used exclusively for commercial purposes ever since. As a result, the disputed property was never developed for residential use as originally intended, and it is no longer possible to develop this property CT Page 12386 as originally intended.
While it is true that in a majority of states changes outside the limits of the tract do not justify any relaxation of enforcement of the restrictions within the tract, this rule is applicable only so long as it is possible to carry out the original purpose of the development. See: Bickell v. Moraio,117 Conn. 176, 181-82 (1933).
In this case, even if the restrictive covenants were applicable to this parcel of land, the court finds that enforcement of those restrictions under the particular facts and circumstances of this case would be inequitable as this specific parcel can no longer be developed in the manner contemplated by the terms of the Declaration of Restrictions. See: Harris v.Pease, 135 Conn. 535, 541 (1949); Hartford Electric Light co. v.Levitz, 173 Conn. 15 (1977); Gino's Pizza of East Hartford Inc.v. Kaplan, 193 Conn. 135, 139 (1984).
The defendant argues that since the plaintiffs did not challenge the construction of the paved parking lot, and the erection of the light poles, and the construction of the swimming pool on a portion of the disputed land during the 1960's, they have abandoned the restriction and/or acquiesced in the violations of the restriction. Plaintiffs argue that the paved parking lot and the swimming pool, and the light poles are not structures within the meaning of the Vernon Zoning Regulations.
Additionally, the defendant claims that because the plaintiffs have been aware of these alleged violations for 30 years, the three-year statute of limitations in bringing this action has expired. See: § 52-575a C.G.S. The plaintiffs counter this by claiming that the statute of limitations did not start to run until the defendant filed for a permit to construct a building on the land. Finally, the defendant claims that there has been an unreasonable delay, to his detriment, in the bringing this action.
Section 2.120 of said regulations defines structure or building as "Anything constructed, erected on or attached to afixed location on or below the ground to give support, provide shelter or satisfy other purposes." (Emphasis added). The paved parking lot is constructed on a fixed location on the ground and satisfies a purpose other than to give support or provide shelter. The swimming pool was constructed on a fixed location CT Page 12387 below the ground and gives support to the water which it contains. The light poles were erected on a fixed location on the ground and give support to the light fixtures. The court finds that these are structures within the meaning of the Vernon Zoning Regulations.
Nevertheless, the acquiescence of the plaintiffs to the incursion of part of a swimming pool onto a portion of the disputed property, and the construction of a parking lot and light poles on the property does not mean that they have relinquished their right to challenge the construction of a commercial building on the property. A waiver of one or more restrictive covenants does not constitute a waiver of more substantial violations. Hackett v. Roosevelt School, Inc.,145 Conn. 119 (1958); First Ecclesiastical Society of Branford v.Sloane, 150 Conn. 611 (1963). The court finds that the statute of limitations began to run on December 23, 1992 when the defendant filed a special permit and site plan application seeking permission to construct a building for a pharmacy on the property, and that the plaintiffs commenced this action on December 22, 1995.
The defendants claim of latches also is without merit. When the defendant purchased the parcel in question it was being used as a parking lot for the adjacent commercial establishments. The defendant continues to use the property for that purpose. The plaintiffs commenced legal action in a timely fashion when they learned that the defendant intended to expand his commercial use of the property by constructing a commercial building thereon. The court finds that the defendant has not proven that there has been an unreasonable delay by the plaintiffs in seeking to enforce the Declaration of Restrictions, or that he has suffered any detriment as a result thereof.
As to the defendants claim of estoppel, no credible evidence was introduced proving that the defendant acted to his detriment based upon any representation or misrepresentation by the plaintiffs. "For estoppel to exist there must be misleading conduct resulting in prejudice to the other party." Lunn v.Tokeneke Assn., Inc., 227 Conn. 601, 607 (1993)
Finally, the court finds that the named plaintiffs are the real parties in interest in this case. The fact that the owners of Vernon Drug financially assisted the residential homeowners in bringing this action does not mean that the legal interests and CT Page 12388 practical concerns of the are not valid. The court accepts as credible and persuasive the testimony of the plaintiffs that they would have attempted to bring the action even without the financial assistance of Vernon Drug.
For the reasons stated above, the court finds that:
 1. The plaintiffs have not proven that the property in question remains subject to the Declaration of Restrictions.
 2. The defendant has proven his First Special Defense to the extent that said Special Defense claims that the original Declaration of Restrictions no longer applies to the land in question due to a resubdivision of the property and that substantial changes in use and zoning would make it inequitable to enforce the restrictions as to this particular parcel of land.
 3. The defendant has not met his burden of proof as to Special Defenses Two through Five.
It is the judgement of the court that the provisions of the Declaration of Restrictions are not applicable to nor enforceable against former Lots 47-51 of Vernwood Farms Section B. The request for an injunction is denied.
Terence A. Sullivan Superior Court Judge