## ANN B. LUNN *v.* THE TOKENEKE ASSOCIATION, INC. (14663)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued April 28—decision released August 31, 1993

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Christopher Smith,* for the appellant (plaintiff).

*John R. Harness,* with whom was *Lori E. Gargagliano,* for the appellee (defendant).

CALLAHAN, J. The plaintiff, Ann B. Lunn, appeals from the judgment of the trial court, concluding, on

the ground of equitable estoppel, that the plaintiff could not prevail in her action against the defendant, The Tokeneke Association, Inc., and that the defendant was entitled to injunctive relief to prevent the plaintiff from constructing a house on her property in Darien.[1]

In July, 1991, the plaintiff commenced the present action alleging that the defendant had wrongfully, unlawfully, and unreasonably denied her requests to subdivide and construct a single-family dwelling on her property on the westerly side of Contentment Island Road in the Tokeneke section of Darien. The plaintiff sought an injunction requiring the defendant to approve her requests. The defendant counterclaimed seeking a permanent injunction to prevent the plaintiff from selling, transferring or building on the property in violation of applicable restrictive covenants prior to January 1, 2000.

After a hearing, the trial court, *Hon. George A. Saden,* state trial referee, rendered a judgment for the defendant on both the complaint and the counterclaim, enjoining the plaintiff from constructing a house on the property in question. The plaintiff appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The parties stipulated to and the trial court found the following facts. On October 10, 1950, a 4.9 acre tract of land on the westerly side of Contentment Island Road was conveyed by warranty deed from Norton, Inc., to Robert L. Cudd. The deed from Norton, Inc., to Cudd contained certain restrictive covenants.[2] The

---

[1] See footnote 2.

[2] The covenant and restrictions provided: "1. That the plans, specifications, and location of any and all buildings and installations to be constructed on the premises hereby conveyed shall be submitted to and approved by

defendant is the successor to Norton, Inc., and the beneficiary of the restrictive covenants. In 1959, Norton, Inc., approved the subdivision of the 4.9 acre tract owned by Cudd into a one acre parcel and a 3.9 acre parcel, without waiver of any right otherwise to enforce the restrictive covenants. This approval allowed Cudd to convey the one acre parcel to a third party. In 1983, Cudd's estate conveyed the 3.9 acre parcel to the plaintiff and Nancy Glanville as tenants in common. The 3.9 acre parcel is directly across the street from and west of the plaintiff's and Glanville's respective house lots and is separated from those lots by Contentment Island Road.

Thereafter, in July, 1984, the plaintiff and Glanville applied to the Darien planning and zoning commission (commission) to divide the 3.9 acre parcel between them for the sole expressed purpose of gaining individual ownership of the land directly across the street from their respective houses. They specifically represented to the commission that they were not seeking to divide their land for approval as building sites and that they

the said Grantor, acting through its President or Treasurer or successor of said Corporation, or the assignee of the said Corporation's right and interest in and to the roads, ways, drives, and avenues, at Tokeneke, so-called, in said Town of Darien.

"2. That said premises are not to be used for any business purpose whatsoever, or for any purpose other than a strictly private residence, and they are not to be subdivided for the purpose of sale or transfer, and no sewer, cesspool, or drain shall be constructed, used, maintained, or permitted thereon (other than for surface water), unless approval be first obtained in the manner hereinabove provided for the approval of the plans and location of any building before erecting the same on said premises.

"3. That the several conditions and provisions herein contained shall run with the land hereby conveyed, and the same shall be binding upon the said Grantee, his heirs, executors, administrators and assigns until the first day of January, A.D., 2000."

The trial court found that "both parties agree that a subdivision in this case and plans for [a] one-family house require approval of the Defendant Association."

planned to maintain the property with "an attractive open view." They made the same representations in a letter sent to their neighbors. Their attorney moreover informed the commission that the plaintiff and Glanville had purchased the 3.9 acre parcel only "to protect their existing properties on the easterly side of Contentment Island Road." Their attorney also stated that he would be willing to file maps depicting the newly created parcels simply as annexations to the existing residential building lots on which his clients' homes were located across the street. He objected to the creation of a conservation easement on the land, however, because such an easement would be permanent and he did not "know what could happen [twenty] years down the line—[fifty] years down the line."[3] On September 11, 1984, the commission approved the plaintiff's and Glanville's application for the division of their land solely for "annexation" as depicted on the map, and not as building sites.[4]

In 1985, counsel for the plaintiff and Glanville wrote to Warren MacKenzie, then president of the defendant, to request the defendant's approval of the division. In his letter, he expressed his belief that, because the separate parcels were created only for annexation to the plaintiff's and Glanville's existing residential lots, and the approval of those lots as building sites was not

[3] At this point, the court noted the fact that the restrictive covenants in issue expire on January 1, 2000, approximately fifteen years from the date of the commission hearing.

[4] The trial court noted that annexation was actually impossible because the parcels were separated from the housing lots by a road, "so that what [the] Plaintiff and Glanville were probably talking about was a split of the tract of land on the west side of the Road . . . . In fact this whole proceeding before the [commission] appears to be totally unnecessary. If all that the Plaintiff and Glanville were seeking was a division of the land between themselves, it would seem a surveyed line and exchange of deeds between them would have accomplished that without seeking [planning and zoning] approval of an 'annexation' which the commission was not empowered to grant them."

sought, the restrictive covenants did not apply. To avoid uncertainty, however, he solicited the defendant's approval.

In March, 1985, MacKenzie, acting on behalf of the defendant, sent a letter to the plaintiff and Glanville, approving the division of the 3.9 acre parcel. He qualified the defendant's approval, however, by stating that the approval was not a waiver of any other restrictive covenant contained in the deed, nor a waiver of the right of the defendant to require approval of any further division of either parcel. In April, 1985, the plaintiff and Glanville executed cross conveyances so that each became the sole owner of that portion of the divided parcel directly across the road from the respective residence of each.

MacKenzie served as president of the defendant until November, 1985. Shortly thereafter, the plaintiff retained MacKenzie, an attorney, to represent her in connection with her Tokeneke real estate. In 1986, MacKenzie filed an application with the commission seeking approval of a plan to subdivide the plaintiff's property for the purpose of creating a building site on the westerly side of Contentment Island Road by separating the lot on which the plaintiff's house is located from the lot on the westerly side of the road that had been annexed to her house lot in March, 1985. The application was ultimately approved by the commission on July 14, 1987.[5]

In January, 1990, MacKenzie applied to the defendant for approval of the plaintiff's subdivision and building plans. The defendant initially took the position that, because of the wording of the restrictive covenants, it was not empowered to review or approve the proposed

[5] An appeal was taken from the approval by an abutting property owner, and was denied by the court, *Nigro, J.,* on June 22, 1989. A subsequent appeal to the Appellate Court was denied on November 16, 1989.

subdivision. The plaintiff then commenced a lawsuit seeking temporary and permanent injunctive relief to require the defendant to review and act upon her application, or to waive that right. The court, *Hodgson, J.,* granted the plaintiff her requested relief and ordered the defendant to review the plaintiff's request for subdivision approval or to advise her in writing that it waived its right to do so.[6]

Pursuant to the court's order, the defendant held a public hearing on February 5, 1991, to consider the plaintiff's application. On February 26, 1991, the defendant, by a unanimous vote, denied the plaintiff's request for subdivision approval.[7] In doing so, the defendant noted that the property in question was specifically designated as both open space and a natural, scenic and conservation area in the Darien plan of development. It was further noted that the Darien plan of development expressed a purpose of preserving tidal wetlands and visual public access to scenic areas such as the property in question. Moreover, the defendant claimed that the expert testimony offered at the hearing demonstrated that the plaintiff's proposal "was deficient in many respects under zoning, planning and other standards."[8] Ultimately, the defendant refused

---

[6] The trial court took note of the fact that the plaintiff had testified before Judge Hodgson that, at the time of purchase, she did not believe the subject property was "buildable."

[7] The trial court concluded that the denial of approval for a building site impliedly constituted a denial of the proposed building plans also. The court noted that the defendant gave considerable attention to both the subdivision and the building plans. The building plans proposed the construction of a single-family dwelling on the site.

[8] The trial court also took note of the fact that the plaintiff's expert witness acknowledged that a septic system on the subject parcel would not overflow into the surface if the land was flooded by a tidal flood, which generally has a duration of two or three hours, but would fail if there was a long-term inundation. It was found that the septic system would be inundated several times a year due to storms in the area and that the entire property had been under water from time to time in the past. The plain-

to approve the plaintiff's subdivision in order to maintain the subject parcel as open space until the year 2000.

On appeal, the plaintiff claims that the trial court improperly concluded that: (1) the defendant acted reasonably and in good faith in denying the plaintiff's application for approval of subdivision and building plans; (2) the plaintiff was estopped from claiming injunctive relief; (3) the plaintiff impliedly waived a claim to injunctive relief; and (4) the defendant was entitled to injunctive relief. Because we agree with the trial court that the plaintiff was estopped from claiming injunctive relief, we find it unnecessary to reach the plaintiff's other claims.

To decide this appeal we are required to resolve the plaintiff's claim that the trial court was incorrect when it determined that the defendant had established the applicability of the doctrine of equitable estoppel. Two essential elements must be proved by the party claiming equitable estoppel in order to have the doctrine apply: " '[T]he party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.' " *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 252 n.7, 618 A.2d 506 (1992), quoting *O'Sullivan* v. *Bergenty,* 214 Conn. 641, 648, 573 A.2d 729 (1990). For estoppel to exist, there must be misleading conduct resulting in prejudice to the other party. *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 85, 480 A.2d 499 (1984). The plaintiff argues that the defendant was not entitled to the relief provided by equitable estoppel because it failed to prove that it suffered any injury as a result of her representations.

---

tiff's expert witness also conceded that the five hundred gallons the system could handle would not reach the Long Island Sound as clean, potable water.

The trial court concluded that the plaintiff's " 'annexation' request . . . prejudiced the Defendant Association's position . . . in dealing with [the] Plaintiff's second request for subdivision and approval of house plans." The plaintiff challenges the trial court's conclusion that the defendant was so prejudiced. In reviewing the court's conclusion, we must determine whether it is legally and logically correct and finds support in the facts and whether the facts relied on by the trial court in its memorandum of decision are supported by the evidence or whether, in light of the whole record, they are clearly erroneous. *O'Sullivan* v. *Bergenty*, supra, 648; *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 444, 440 A.2d 935 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The trial court found that the plaintiff acted "in complete abnegation of the very clear and specific statements and promises of [her] and her counsel that these parcels would remain open land and would provide a scenic view for [the] Plaintiff's and Glanville's homes on the easterly side of Contentment Island Road which [the] Plaintiff and Glanville claimed they sought to 'protect' when they bought the westerly tract at a cheap price because it was not buildable." The trial court concluded that "[c]onsidering all of the circumstances surrounding [the] Plaintiff's first request for 'annexation' . . . causing the Defendant Association to accede to the 'annexation' *only* because of the Plaintiff's representations, but not granting approval as a building site, it seems that . . . an estoppel . . . [has] application here." (Emphasis in original.)

The plaintiff, however, contends that estoppel is not applicable because the defendant was not injured in any way by what occurred in the "annexation" proceedings before either the commission or the defendant because the trial court found that subdivision and

annexation were actually impossible under the circumstances existing and that the commission's 1984 approval and the defendant's 1985 approval of the plaintiff's subdivision were in effect a nullity. The trial court stated that annexation was impossible because the divided parcels were separated by Contentment Island Road from the applicants' residences and that neither the statutes nor ordinances empowered the commission to approve annexation of properties so situated. Moreover, the trial court found that the commission was not empowered to grant a subdivision application since General Statutes § 8-18 defines subdivision as "the division of a tract or parcel of land into three or more parts or lots . . . expressly excluding development for municipal, conservation or agricultural purposes . . . ."[9]

Thus, the trial court found the commission's 1984 and the defendant's 1985 approval were unnecessary. "[T]he only thing that was accomplished by their application was to draw a line between [the] Plaintiff's and Glanville's portions and labeling them 1a and 2a." The trial court noted that if the plaintiff and Glanville wanted to divide the property between themselves, "a surveyed line and exchange of deeds between them would have accomplished that without seeking [planning and zoning] approval of an 'annexation' which the Commission was not empowered to grant them."

The trial court found, however, that the plaintiff "pursued vigorously the so-called 'annexation' procedure mentioned above even though it may have been legally useless because, notwithstanding that fact, the idea could serve to obtain [the commission's] impri-

---

[9] The commission itself later acknowledged that because of the purposes of the plaintiffs' 1984 application the "requirements for the creation of developable lots under the Subdivision and Zoning Regulations did not apply."

matur for drawing a line between the parcels of [the] Plaintiff and Glanville as a first step toward proceedings thereafter to apply for a building site approval. The fictitious 'annexation' served no other purpose but to create a flimsy verbal excuse to split the westerly land area and thus make the next attack a little easier, viz., to convert the two parcels, created by drawing the dividing line, into building sites. It greased the approach to that objective by making it appear the two parcels were already there and all the [commission] had to do was bless them as building sites, and it placed the Defendant Association in a prejudiced position by approving a division of the whole westerly parcel into two lots even for 'annexation' only."

By agreeing to the subdivision of the land on the westerly side of Contentment Island Road for "annexation" purposes in 1985, the defendant could no longer consider the original 3.9 acre parcel when faced with the plaintiff's subsequent application for subdivision for building purposes that is the subject of this appeal. Had the defendant been confronted with a subdivision application for building purposes in 1985, it would have been able to exercise some control over the configuration of the lots and the location of any proposed structures and waste disposal systems on the entire 3.9 acre parcel. Now, the defendant is faced with the fait accompli of two separate properties and is limited to considering the location of the structure and septic system on the plaintiff's two acre parcel. Moreover, a subdivision of the original 3.9 acre parcel for building purposes might have been denied altogether if the defendant had determined that it was too small or otherwise inadequate for two houses. Now, the defendant is met with two separate lots with the potential for two houses. We conclude that the trial court could properly have found from the evidence that "the pursuit of the 'annexation' request to divide the land . . . was a maneuver . . .

to place both the [commission] and the Defendant Association in the position of having approved the creation of [the subject parcel] and thus making it somewhat more difficult for both the [commission] and Defendant Association to reject a subsequent request for approval of [the subject parcel] as a building site."

On the basis of the trial court's findings, it was reasonable for it to conclude that the plaintiff intended to induce the defendant association to believe that she would keep the subject parcel as open space in order to gain approval of the initial subdivision and that the defendant granted such subdivision in reliance on that representation, thereby prejudicing itself in relation to the plaintiff's later application for a subdivision to create a building site. We conclude that the trial court could properly have found that the defendant successfully proved the elements of estoppel so as to defeat the plaintiff's claim for injunctive relief.[10]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] The trial court also enjoined the plaintiff from engaging in the construction of a residence on her land on the westerly side of Contentment Island Road, in violation of the restrictive covenant, until the year 2000. In view of its evidentiary findings, the trial court did not abuse its discretion in so doing. See *Manley* v. *Pfeiffer,* 176 Conn. 540, 544–45, 409 A.2d 1009 (1979); *Hartford Electric Light Co.* v. *Levitz,* 173 Conn. 15, 22, 376 A.2d 381 (1977).