BANK OF BOSTON CONNECTICUT *v.* AVON
MEADOW ASSOCIATES ET AL.
(13326)

Dupont, C. J., and O'Connell and Heiman, Js.

Argued September 22, 1995—decision released March 5, 1996

*Richard P. Weinstein,* with whom, on the brief, was *Peter B. Ruslin,* for the appellants (defendants).

*Ben M. Krowicki,* with whom, on the brief was *James S. Rollins,* for the appellee (plaintiff).

O'CONNELL, J. The plaintiff brought this action to collect on an unpaid promissory note. The defendants[1] do not contest the award to the plaintiff of \$2,205,911.77 on the complaint, but instead challenge the denial of their counterclaim.

---

[1] The defendants are (1) Avon Meadow Associates, a general partnership comprised of James G. Sutton, Barrett L. Krass and James J. Heneghan, and (2) Sutton, Krass and Heneghan in their individual capacities because they personally signed a guarantee of payment of the note.

The defendants claim that the trial court improperly (1) failed to rule, as a matter of law, that the release that they executed was ineffective as to their counterclaim, (2) instructed the jury on estoppel, and (3) instructed the jury on the effect of an agreement to execute a subsequent release. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendants were financing an office condominium project in Avon through a series of construction mortgage loans from the plaintiff bank. The project, consisting of ten buildings containing four office units each, was being constructed in phases. The present action concerns a promissory note and guarantees dated April 29, 1988. On December 18, 1989, the plaintiff notified the defendants that it would insist on payment of the note on its May 1, 1990 due date and would thereafter discontinue financing the project.

By letter dated April 30, 1990, the bank formally demanded full payment of the loan by the next day. The defendants lacked personal funds to meet this demand and could not secure alternative financing. On June 7, 1990, the plaintiff sent the defendants a letter requiring the defendants to execute a forbearance agreement no later than June 8, 1990.[2] This case focuses on paragraph two of that agreement[3] because the plain-

---

[2] In response to an interrogatory, the jury found no duress on the defendants in executing the forbearance agreement. The defendants do not challenge this response.

[3] "Debtor and Guarantor jointly and severally acknowledge and affirm the Debt represented by the Note, Mortgage, Guaranty and any other documents executed in connection therewith. Debtor and Guarantor further represent that, as of the date hereof, no defense, setoff or claim exists with respect to Bank, either matured or unmatured, contingent or certain, direct or indirect, which could be raised in defense or in diminution of the amounts claimed under the said Note. Further, Guarantor and Debtor hereby covenant and agree that they will execute such documents as Bank may reasonably request, which documents will serve to forever waive and release any

tiff claims it is a release and bars the defendants' counterclaim.

On April 9, 1991, the plaintiff commenced this action to recover the amount due under the note and guarantees. The defendants counterclaimed, inter alia, that the plaintiff breached an oral contract by which the plaintiff agreed to fund the project to completion. The jury returned a verdict in favor of the plaintiff both on its claim and on the defendants' counterclaim.

Through interrogatories, the jury indicated that it found the existence of an oral contract between the defendants and the plaintiffs to fund the condominium project to completion. Additionally, the jury responded that the bank breached this oral contract and also violated the Connecticut Unfair Trade Practices Act. Notwithstanding these findings, the jury also found that the forbearance agreement constituted a release by the defendants of their counterclaim or found that the defendants were estopped to assert their counterclaim.[4] The defendants filed a timely motion to set aside the verdict, which the trial court denied.

I

The defendants' counterclaim was based on a theory that the plaintiff was obligated to fund the building project to completion. The plaintiff pleaded the forbearance agreement as a special defense to the counterclaim.

A

The defendants first contend that the trial court should have ruled, as a matter of law, that the release

defense, claim or counterclaim by Debtor or Guarantor against Bank for any action occurring prior to the date of this Agreement."

[4] Although it seems inconsistent that the jury found *either* that the forbearance agreement constituted a release *or* that the defendant was estopped from asserting its counterclaim, the interrogatories to the jury were phrased in this particular manner. We therefore address both alternatives.

contained in the forbearance agreement was ineffective as to the defendant's counterclaim, arguing that the terms of the contract are unambiguous. The claim arises from the word "claim" in the second sentence and phrase "claim or counterclaim" in the third sentence. When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994). When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved. See *Dainty Rubbish Services, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 533–34, 630 A.2d 115 (1993).

The language of both the second and third sentences is clear. The terms are not subject to alternative interpretations, but rather the terms in the second and third sentences are inconsistent and conflicting. This case therefore calls for the determination of what the parties intended when they entered into the agreement containing inconsistent and conflicting clauses. Id. Questions of the parties' intent are questions of fact for the fact finder. See, e.g., *Levine* v. *Massey*, 232 Conn. 272, 276, 654 A.2d 737 (1995). Accordingly, we conclude that the trial court properly submitted the question to the jury.

B

The defendants next argue that their counterclaim cannot be considered as having been pleaded in defense or diminution of the amounts claimed under the note within the meaning of paragraph two because the counterclaim is much broader in scope than the note that was the subject of the plaintiff's complaint.

The defendants fail to recognize that their counterclaim is actually a setoff of the amount admittedly due under the plaintiff's claim. "In any action brought for the recovery of a debt, if there are mutual debts between

the plaintiff . . . and the . . . defendants or any of them, one debt may be set off against the other." General Statutes § 52-139 (a). The defendants' argument to this court that their counterclaim is broader than the plaintiff's claim demonstrates that it is properly denominated a setoff instead of only a reduction. "A set-off is made where the defendant has a debt against the plaintiff arising out of a transaction independent of the contract on which the plaintiff sues, and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, *and, as the case may be, to recover a judgment in his own favor for a balance.*" (Emphasis added.) *Avery* v. *Brown*, 31 Conn. 398, 401 (1863).

The fact that the defendants' counterclaim in this case might give rise to damages in excess of those due the plaintiff does not bar it from being a setoff. "If it appears upon the trial that the plaintiff is indebted to the defendant, the court shall give judgment for the defendant to recover the balance due of the plaintiff with his costs . . . ." General Statutes § 52-139 (c).

In the present case, the defendants' counterclaim is for money damages against the identical party that is suing them for money damages. The law of setoff applies to the defendants' counterclaim and, therefore, the fact that it may be broader than the plaintiff's claim is irrelevant.

II

The defendants next contend that the trial court should not have instructed the jury on the doctrine of estoppel because there was no evidence to support a finding of estoppel by the jury.

The elements of estoppel are (1) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to

believe that certain facts exist and to act on that belief, and (2) the other party must change its position in reliance on those facts to its detriment. *Lunn* v. *Tokenek Assn., Inc.,* 227 Conn. 601, 607, 630 A.2d 1335 (1993). Under Connecticut law, a party is estopped from asserting a claim when the other party reasonably relied on its representations. See, e.g., *Katz Realty, Inc.* v. *Norwalk Fabricators, Inc.,* 14 Conn. App. 396, 401, 541 A.2d 519 (1988).

The defendants argue that there was no evidence that the plaintiff changed its position in reliance on the defendants' execution of the forbearance agreement to support the element of reasonable reliance. The record, however, does not support this contention. The bank officer who executed the forbearance agreement testified that the plaintiff would not have entered into the agreement if it did not contain the release language. Additionally, there was testimony to the effect that, as a result of the plaintiff's reliance on the agreement, it neither commenced immediate foreclosure of the mortgage nor took immediate collection action on the note.

We conclude that there was sufficient evidence to support submitting the estoppel issue to the jury.

### III

In their final claim, the defendants argue that the trial court improperly charged the jury that an agreement to execute a subsequent release is sufficient to release the defendants' counterclaims where there was no evidence that all material terms of the proposed release were agreed upon among the parties.[5]

---

[5] The trial court submitted the following instruction to the jury: "Again, the language, the second sentence about—to the effect that Avon, in effect, covenants that it will execute such documents as the bank may reasonably request which would serve to waive and release any counterclaim by Avon, the question is for you to interpret that the issue is the intention of the parties as manifested by these words. If the parties agree upon all the terms of a release, then the parties are bound by the release even though they

Under appropriate circumstances, a promise to execute a release in the future may be enforced as a release regardless of whether a release is in fact actually executed. This general principle is qualified, however, to the extent that if such a contract "is to be specifically enforced, it is necessary that its potential terms be sufficiently definite that the nature and extent of the parties' obligation can be ascertained." *Ismert & Associates, Inc.* v. *New England Mutual Life Ins. Co.*, 801 F.2d 536, 542 (1st Cir. 1986). The defendants contend that because there was no evidence of the terms of the proposed future release, the trial court improperly submitted to the jury the question of whether the language of the forbearance agreement could, under the circumstances of this case, be enforced as a release. The defendant Krass, however, testified on the subject of the release. The record therefore does not support the contention that there was no evidence on the terms of the proposed future release.

We will review a trial court's legal rulings, such as denial of a request to charge only to the extent of determining if they are legally and logically correct. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Unless the contrary appears in the record, we will presume that the trial court acted properly and considered applicable legal principles. See *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988). More specifically, "[w]e con-

contemplated the signing of the formal document memorialized in that understanding, and the document was not signed. In other words, it is not determinable of the effectiveness of this release that there was a promise to execute a release into the future. If the language I read to you itself constitutes an intention to give a release, the requirement of executing a formal document in and of itself is not required when there is an agreement to give a release. If the parties did not agree on all the terms of the release or contemplated the signing of the formal document as a condition to the effective condition to the release, then the agreement release is not a bar to Avon's counterclaims."

sider whether the instructions are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . The charge must give the jurors a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues." (Citations omitted.) *Goodmaster* v. *Houser*, 225 Conn. 637, 644–45, 625 A.2d 1366 (1993).

In the present case, the trial court expressly instructed the jury that "if the parties did not agree on all of the terms of the release or contemplated the signing of the formal document as a condition to the effective condition of the release, then the agreement release is not a bar to [the defendants'] counterclaims." We conclude that there was sufficient evidence to submit the release issue to the jury and that the jury was properly instructed that it must find that the parties had agreed to the terms of the final release.

The judgment is affirmed.

In this opinion the other judges concurred.