TOWN OF RIDGEFIELD *v.* EPPOLITI
REALTY COMPANY, INC.

JOHN J. GIROLAMETTI ET AL. *v.* EPPOLITI
REALTY COMPANY, INC.
(AC 20491)

Lavery, C. J., and Schaller and Peters, Js.

---

Argued February 26—officially released July 30, 2002

*Paul L. Bollo,* for the appellant (defendant in both cases).

*Patricia C. Sullivan,* for the appellee (plaintiff in the first case).

*Robert A. Fuller,* for the appellees (plaintiffs in the second case).

*Opinion*

LAVERY, C. J. The defendant, Eppoliti Realty Company, Inc., in each of two cases consolidated for trial appeals from the judgments of the trial court determining that the entire parcel of land at issue was dedicated by the defendant and accepted properly as a public highway by the plaintiff town of Ridgefield (town) and enjoining the defendant from obstructing the other plaintiffs'[1] access to that highway. The defendant claims on appeal that the court improperly (1) concluded that the entire parcel of land at issue was dedicated and accepted as a public highway, (2) failed to conclude that the plaintiffs' claims were barred by the doctrines

[1] The other plaintiffs are John J. Girolametti, Dorothy Girolametti, Navio J. Ligi and Ridea R. Ligi, all of whom own property abutting the parcel. We refer in this opinion to the plaintiffs in the second case as the plaintiffs and to the plaintiff in the first case as the town. At trial, the plaintiffs claimed a private easement of access to the parcel, derivative from its status as a public highway. "Connecticut law recognizes that the existence of a public highway creates two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access, that permits the landowners who abut the highway to have access to the highway and to the connecting system of public roads." (Internal quotation marks omitted.) *Cohen* v. *Hartford,* 244 Conn. 206, 209–10 n.8, 710 A.2d 746 (1998).

of laches, unclean hands and equitable estoppel, (3) failed to order that the plaintiffs John J. Girolametti and Dorothy Girolametti comply with an earlier stipulated judgment and (4) failed to conclude that the judgments in this case were void for lateness. We disagree with those claims and affirm the judgments of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The parcel of land at issue is a long and narrow one-half acre strip located in the town of Ridgefield, running north from a major thoroughfare. The southernmost portion of the parcel is situated to the west of commercial property owned by the defendant, and to the east and southeast, respectively, of properties owned by the Girolamettis and the plaintiffs Navio J. Ligi and Ridea R. Ligi. The Girolametti property houses shops and an apartment building, and the Ligi property is residential. Further north, the parcel is bordered on both sides by other residential properties. The parcel is composed of a central paved portion that long has been used for travel by the public, and the narrow strips of land running along both sides of the paved portion. It is known to area residents as "Roberts Lane." It is undisputed that the defendant owns the fee to the entire parcel. The parties differ as to that portion of the parcel over which the defendant dedicated an easement to the town for use as a public highway. The plaintiffs contend that the entire parcel was so dedicated and, thereafter, accepted by the town, while the defendant argues that the public highway consists of only the paved, traveled portion and not the strips to either side thereof.

The disputed dedication resulted from a stipulated agreement between the defendant, the Girolamettis and the town (stipulation), executed and reduced to judgment in January, 1980. The stipulation was intended to settle a lawsuit brought by the defendant against the Girolamettis regarding drainage from the Girolametti

property onto the defendant's property. The stipulation states in relevant part "[t]hat . . . John J. Girolametti and Dorothy Girolametti shall dedicate to the extent allowed by zoning and planning regulations for its buildings that portion of their property abutting Roberts Lane to be a portion of the public highway" and "[t]hat the . . . Town of Ridgefield shall call a meeting for the acceptance of Roberts Lane as a public road within a reasonable time, and that the First Selectman of Ridgefield recommend acceptance of the road."[2]

A map filed in the town land records in 1967 depicts the parcel and the adjoining properties. The boundaries of the parcel are shown in metes and bounds. Within and generally parallel to those boundaries are two dotted lines representing the paved, traveled portion of the parcel. The parameters of the paved, traveled portion are not shown in metes and bounds. Inscribed between the two dotted lines is "ROBERTS LANE."

On December 3, 1980, after notice to residents, the town's board of selectmen held a meeting at which the first selectman recommended that "Roberts Lane" be

---

[2] The stipulation states in full: "The parties agree and stipulate that judgment may be entered in accordance with the following: 1. The defendants John J. Girolametti and Dorothy Girolametti pay the plaintiff [Eppoliti Realty Co.] a total of $5,000 cash at the time this stipulation is signed by all parties and filed with the court. 2. That defendants John J. Girolametti and Dorothy Girolametti shall dedicate to the extent allowed by zoning and planning regulations for its buildings that portion of their property abutting Roberts Lane to be a portion of the public highway. 3. That the defendant Town of Ridgefield shall call a meeting for the acceptance of Roberts Lane as a public road within a reasonable time, and that the First Selectman of Ridgefield recommend acceptance of the road. 4. The plaintiff shall not oppose any action by the defendants in connection with the installation of drainage, and construction of a large complex of shops and apartments, as alleged in paragraph 4 of the complaint, and shall withdraw any conservation commission, wetlands, or planning and zoning objections or opposition, now or in the future, provided that the defendants conform to the special permit which was issued, and the conditions imposed thereon. 5. Judgment in accordance with the above may enter without costs."

accepted as a town road.[3] No opposition was raised to that recommendation, and the board voted in favor of it. The town continued to maintain the paved portion of the parcel, as it had even prior to the stipulation.

In 1995 or 1996, the defendant erected a fence along the western border of the parcel, completely fencing off the Girolamettis' property. There is an opening in the fence suitable for pedestrians located on abutting property to the north of the Girolametti property. The defendant later constructed brick pillars immediately adjacent to the paved portion of the parcel and placed signs on the pillars indicating that the road was private.

The town thereafter brought an action against the defendant seeking a judgment determining the rights of the parties to the parcel, and requesting declaratory and injunctive relief declaring the entire parcel a public highway and authorizing the town to remove any obstructions thereto. The defendant filed a counter-claim requesting a judgment declaring that the town has an easement for public use over only the paved and traveled part of the parcel. Subsequently, the Girolamettis and the Ligis brought a separate action, claiming that the entire parcel had been dedicated and accepted as a public highway, and that the defendant's fence was obstructing and interfering with their private easement rights to access the highway. See footnote 1. They requested monetary damages and an injunction pre-venting the defendant from blocking their access to the highway.[4] The defendant counterclaimed, alleging that the Girolamettis had failed to adhere to the terms of the stipulation in that they never had dedicated any of their land to the town and the town never had accepted the same, and requesting an order requiring full compli-

---

[3] Pursuant to § 7-3 (h) of the Ridgefield charter, the board of selectmen has the power "[t]o accept, or refuse to accept, roads offered to the town, and to abandon or discontinue town roads . . . ."

[4] The claim for monetary damages was withdrawn at trial.

ance with the stipulation. The defendant further alleged several special defenses.

The two actions were consolidated and tried before the court, *Mihalakos, J.*, in January, 1998. In a memorandum of decision dated December 1, 1999, the court concluded that the entire parcel had been dedicated and accepted as a public highway, and rejected the defendant's special defenses and its claim that the Girolamettis did not comply with the stipulation. The court permanently enjoined the defendant from obstructing access to the highway and ordered it to remove the fence along the boundary line. On December 6, 1999, the defendant filed a motion to set aside the judgments as void for lateness under General Statutes § 51-183b. After a hearing, the court, *Radcliffe, J.*, denied that motion, finding that the parties had waived any objection to the lateness of the judgments. This appeal followed. Additional facts will be provided where necessary.

I

The defendant claims first that the court improperly concluded that the entire parcel of land at issue was dedicated by the defendant and accepted by the town as a public highway. We disagree.

"From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . Dedication is a appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, two elements are essential to a valid dedication:

(1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public. . . . No particular formality is required in order to dedicate a parcel of land to a public use; dedication may be express or implied. . . . Whether there has been a dedication and whether there has been an acceptance present questions of fact." (Citation omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 394, 662 A.2d 118 (1995). "Likewise, the determination of the extent to which there has been an acceptance of a street involves a question of fact." *Whippoorwill Crest Co.* v. *Stratford*, 145 Conn. 268, 272, 141 A.2d 241 (1958).

"Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Citations omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, supra, 234 Conn. 394–95.

The court in this case based its findings that there had been a dedication and acceptance of the entire parcel on the terms of the stipulation and the other evidence presented. "A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. . . . Construction of such an agreement is an issue of fact to be resolved by the trial court as the trier of fact, and subject to our review under the clearly erroneous standard. . . . The construction and interpretation of the agreement necessarily depends upon the intent of

the parties as manifested by the language of the agreement." (Citations omitted; internal quotation marks omitted.) *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). "Where the language of the agreement is unclear, the trier of fact must look to other factors to determine the parties' intention. A determination as to the parties' intent requires the drawing of an inference from other facts. Where the trier of facts draws such an inference, its finding will not be disturbed unless it is unsupported by the facts or is otherwise unreasonable." *Mihalyak* v. *Mihalyak*, 11 Conn. App. 610, 616, 529 A.2d 213 (1987).

The stipulation in this case provided that the town would take the actions required "for the acceptance of Roberts Lane as a public road . . . ." A necessary implication of this term is that the defendant intended to dedicate "Roberts Lane" as a public road. Because the stipulation did not contain any precise description of the property that comprised "Roberts Lane," the court necessarily considered other factors to infer the extent to which the defendant intended to dedicate the parcel.

The map on file in the town's public records showed the parcel at issue and described it as "ROBERTS LANE." Although that inscription appeared between the dotted lines depicting the paved portion of the parcel, the court reasonably could have inferred, from the lack of precise metes and bounds for the dotted lines, that the inscription was intended to describe the entire parcel. That interpretation is supported by language in the deed that conveyed the parcel to the defendant, which was introduced into evidence at trial. The deed describes both the parcel and the defendant's commercial property to the east, and references the map in the public records. The deed describes the commercial property's western boundary as "the private road

known as Roberts Lane . . . ." That boundary is shown on the map as a solid line situated to the east of the dotted lines depicting the paved portion. Thus, the language of the deed, read in conjunction with the map, conveys the impression that the strip to the east of the paved portion is encompassed by the name "Roberts Lane."

Further support for the finding that "Roberts Lane" contemplates the entire parcel is found in the language of the stipulation. First, the stipulation describes the Girolamettis' property as "abutting Roberts Lane." The map shows the boundary between the Girolametti property and the parcel as a solid line situated to the west of the dotted lines depicting the paved portion. Thus, the language of the stipulation, read in conjunction with the map, conveys the impression that the strip to the west of the paved portion is encompassed by the name "Roberts Lane." Second, it would make no sense for the Girolamettis, pursuant to the stipulation, to dedicate a part of their land "to be a portion of the public highway" if the defendant's dedication was limited to the paved portion of the parcel because a strip of undedicated land then would remain between the two portions dedicated to be part of the same public highway.

Later action by the defendant indicates its acknowledgement that it had dedicated the entire parcel as a public highway. In 1989, the defendant applied to the town's zoning authorities for a variance to use commercial property in a manner that, under the town regulations, normally required that the property have frontage on a public road with a minimum width of fifty feet. Relying on the defendant's representation that the commercial property fronted on a public road with a width of thirty-eight feet, which could not be widened due to the unavailability of additional land, the zoning authorities granted the variance. If, as the defendant now contends, it dedicated only the paved portion of the parcel,

the commercial property would not have frontage on a public road, but would be separated from that road by the narrow strip of the parcel it retained. Furthermore, evidence was presented at trial to show that the width of the entire parcel was thirty-eight feet and that the width of the paved portion was something less.

On the basis of the language of the stipulation and the other evidence presented, the court reasonably could have concluded that the defendant intended to and did dedicate the entire parcel to the town for use as a public highway. We therefore conclude that the court's finding as to dedication was not clearly erroneous.

The defendant argues that the court instead should have credited the testimony of its officer that the dedication was intended to be limited and conditional. We note in that regard that the defendant's challenge to this factual finding is essentially an attempt to relitigate the facts on appeal. "This court cannot retry the facts or pass upon the credibility of witnesses. . . . *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 220, 435 A.2d 24 (1980)]." (Internal quotation marks omitted.) *Drabik* v. *East Lyme*, supra, 234 Conn. 395.

The defendant also argues that the court's finding as to acceptance was in error because the minutes of the town meeting memorializing the vote to accept referred only to "Roberts Lane" and did not describe the exact parameters of that which was accepted. The defendant thus claims that the town accepted only the paved, traveled portion of the parcel. We disagree because the evidence that the court relied on to conclude that "Roberts Lane" contemplated the entire parcel in the context of the stipulation is of similar applicability here.

Furthermore, despite the defendant's contention that "[t]here is not a shred of evidence that [the town] had any intention but to accept [only] the paved, traveled

portion of the parcel," the record discloses testimony from a representative of the town indicating that its intent was to accept the entire parcel. Richard J. Fricke, the town's attorney at the time of the stipulation and a signatory thereto, testified that it was "absolutely" the town's intent to accept the entire parcel as a public highway. Fricke explained that the town's standard practice in a road dedication was to accept areas outside the traveled portion for purposes of snow removal, utilities and drainage, and that the town never accepted only the paved part.

Because there was substantial evidence on which the court could base its findings that the entire parcel of land at issue had been dedicated by the defendant and accepted by the town, we reject the defendant's claim that those findings were clearly erroneous.

## II

The defendant claims next that the court improperly failed to conclude that the plaintiffs' claims were barred by the doctrines of laches, unclean hands and equitable estoppel. We disagree with each of those claims.

## A

The defendant first notes that the stipulation that resulted in its dedication of the parcel as a public highway was executed some eighteen years prior to the institution of these actions underlying this appeal. It argues, therefore, that "[i]t is self evident that a delay of eighteen years is unreasonable and inexcusable, and that the defendant was prejudiced by such a delay because of [its] inability to fully reconstruct relevant facts pertaining to whether or not the dedication by the Girolamettis was prohibited by zoning regulations in 1980, whether or not the [town's] planning and zoning commission had ever considered the matter, and whether or not the board of selectmen accepted the

paved road or the entire parcel on which it lies." The defendant contends further that it will be prejudiced if forced to remove its fence and parking spaces because the spaces are needed to support its uses of its commercial property and the fence is necessary "to protect [the] parking spaces from the unauthorized use by the [Girolamettis] and their tenants." That argument is not convincing.

"The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a party has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." (Internal quotation marks omitted.) *Treglia* v. *Zanesky*, 67 Conn. App. 447, 459, 788 A.2d 1263 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002). We must defer to the court's findings of fact unless they are clearly erroneous. *Drabik* v. *East Lyme*, supra, 234 Conn. 394.

Given the facts and circumstances of this case, a conclusion that the delay in the institution of the actions was inexcusable is not inevitable. Over much of the eighteen year period following the execution of the stipulation, there simply was no reason for any of the plaintiffs to know that the defendant considered its dedication limited to the paved portion of the parcel and, thus, no reason for any of them to bring an action asking the court to declare otherwise. That is because the defendant did not erect the fence until 1995 or 1996, nor did it construct the brick pillars or hang the private road signs until even later. Any difficulty in reconstructing the events and regulatory environment of 1980

was shared by all parties to the actions and did not handicap the defendant disproportionately.

Furthermore, the defendant's claim that it will be prejudiced by the loss of its parking spaces is meritless because the court did not order that they be removed. There are a number of ways in which the defendant may "protect" its parking spaces, and the defendant still may choose one that does not result in the obliteration of its neighbors' private easement rights to access the public highway. Therefore, the court did not improperly fail to conclude that the plaintiffs were guilty of laches.

B

The defendant also argues that the court improperly failed to find that the Girolamettis should be precluded from seeking equitable relief because of their unclean hands. We disagree.

The defendant's claim is that private easement rights should be denied because the Girolamettis "never took action to comply with the 1980 stipulated judgment" in that they "failed to take any action to determine the amount of property that they could dedicate" and because John Girolametti stated at trial that some land could have been dedicated.

"Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied . . .

for the advancement of right and justice." (Citation omitted; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 721, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001). "The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) Id., 722.

In this case, the evidence as to why the Girolamettis did not dedicate any land to the town was conflicting. An attorney that represented the Girolamettis in planning and zoning matters around the time of the stipulation testified that some investigation of the matter of potential dedication had been conducted, in particular the consultation with a town planner who determined that no additional land could be dedicated. Otherwise, the parties submitted differing and inconclusive testimony as to whether the regulations in force in 1980 would have allowed for dedication. John Girolametti testified alternatively that he could have dedicated property, that he could not have and that he still was willing to do so if requested. No evidence was submitted to show that subsequent to the stipulation, the town ever asked the Girolamettis to dedicate any land or that they ever refused to do so. As noted by the court, dedication would have been a "useless act" were nothing required by the town.

It was for the court to weigh the conflicting evidence and to assess the credibility of the witnesses so as to determine the Girolamettis' intentions. *Greene* v. *Perry*, 62 Conn. App. 338, 343, 771 A.2d 196, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001); *Bank of Boston Connecticut* v. *Avon Meadow Associates*, 40 Conn. App.

536, 540, 671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996). On the basis of the foregoing, the court reasonably could have concluded that the Girolamettis did not engage in wilful misconduct such that granting them easement rights would offend the integrity of the court.

Furthermore, we agree with the plaintiffs' argument that "[t]he road widening provision [of the stipulation] was included for the benefit of the town of Ridgefield, not the defendant," and the court's finding that the defendant did not prove that the Girolamettis' failure to dedicate land caused the defendant any damage. To establish the plaintiffs' unclean hands, "[t]he wrong must be done *to the defendant himself* and must be in regard to the matter in litigation." (Emphasis added; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas*, supra, 62 Conn. App. 722. We conclude that the court acted within its broad discretion when it granted the Girolamettis' request for equitable relief and did not find that request barred by the doctrine of unclean hands.

C

The defendant also argues that the Girolamettis' claims are barred by the doctrine of equitable estoppel. We disagree.

In support of that claim, the defendant directs us to evidence of discussions between the defendant's officer and John Girolametti in 1985 regarding the defendant's proposed construction of planter beds along the boundary between the parcel and the Girolamettis' property. The defendant argues that "[John] Girolametti took the position that either party had a right to build a fence on the boundary line," and that the defendant built parking spaces and, in 1995 or 1996, the fence in reliance on Girolametti's purported assurance.

"The defense of estoppel must be supported by proof of two essential elements: (1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts, thereby incurring some injury. . . . An estoppel is predicated on proof of misleading conduct resulting in prejudice to the other party. . . . The party claiming estoppel has the burden of proof, and whether it has met that burden of proof in a particular case is an issue of fact." (Internal quotation marks omitted.) *Treglia* v. *Zanesky*, supra, 67 Conn. App. 459. We therefore review the court's finding under the clearly erroneous standard. *Drabik* v. *East Lyme*, supra, 234 Conn. 394.

Whether John Girolametti made the statement that the defendant claims and, if so, what he intended when he said it, were factual questions for the court to determine. See *Greene* v. *Perry*, supra, 62 Conn. App. 343; *Bank of Boston Connecticut* v. *Avon Meadow Associates*, supra, 40 Conn. App. 540. The court was free to reject the defendant's assertion that ten or eleven years after the purported assurance was made, the defendant proceeded in reliance thereon to construct a fence such as the one it did, one that completely blocks off the Girolametti property and allows pedestrian access only across neighboring property. See *Wilson* v. *Hryniewicz*, 51 Conn. App. 627, 633, 724 A.2d 531 (trier may accept or reject all, part or none of witness' testimony), cert. denied, 248 Conn. 904, 731 A.2d 310 (1999). We cannot say that the court improperly failed to find that the defendant met its burden of proving estoppel.

III

The defendant also claims that the court improperly failed to order the Girolamettis to comply with the stipulation. We disagree.

In its counterclaim in the case brought by the Girolamettis and the Ligis, the defendant alleged that the Girolamettis had not dedicated any land to the town, as contemplated by the stipulation, and requested that the court order "full compliance" with the stipulation. In its memorandum of decision, the court found that the Girolamettis did not breach the stipulation[5] because the town had never requested that they dedicate any land and because they had indicated their continuing willingness to do so if requested. The court found further that the defendant had not proven that it had suffered any damage as a result of the Girolamettis' failure to dedicate land to the town.[6]

A stipulated agreement is in the nature of a contract. *Albrecht* v. *Albrecht*, supra, 19 Conn. App. 152. "Whether there was a breach of contract is ordinarily a question of fact." *Paulus* v. *LaSala*, 56 Conn. App. 139, 153, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). Further, where a breach of contract is alleged, "[t]he amount, if any, of the [defendant's] actual damages is a question of fact." *Sanitary Services Corp.* v. *Greenfield Village Assn., Inc.*, 36 Conn. App. 395, 400, 651 A.2d 269 (1994). "[T]he general rule for the measure of damages in contract is that the award should place the injured party in the same position as he would have been in had the contract been performed . . . ." (Citation omitted; internal quotation marks omitted.) *Vespoli* v. *Pagliarulo*, 212 Conn. 1, 3–4, 560 A.2d 980

---

[5] The court allowed that "[t]here may be a technical breach . . . ."

[6] The defendant claims in its brief that the court's consideration of that issue within the framework of contract law "completely ignores the nature of the defendant's claim" because "[t]he defendant did not sue or claim damages for breach." In neither its posttrial brief nor its appellate brief, however, does the defendant suggest an alternate legal framework for the analysis of its claim. Further, the defendant cites only two cases in its argument for the claim in support of the notion that its request for the court order was timely. We therefore review the issue as the court framed and resolved it.

(1989). We review the court's findings of fact under the clearly erroneous standard. *Drabik* v. *East Lyme*, supra, 234 Conn. 394.

Here, there was conflicting evidence presented as to whether the Girolamettis could have dedicated land and remained in compliance with the town's zoning regulations. There was testimony that some effort was made to discern whether any dedication was possible, but no evidence was presented to suggest that the town ever requested that the Girolamettis make a dedication or that they had refused to do so. John Girolametti testified that he still would be willing to dedicate land if asked. The parties agreed that the Girolamettis had complied with another term of the stipulation that required them to pay the defendant $5000; see footnote 2; and no other violations of the agreement were alleged. As noted by the court, the defendant did not show how it was damaged by the Girolamettis' failure to dedicate land to the town. Although the defendant claimed that it had to seek variances for uses of its commercial property that required the property to have frontage on a wider road, there is no evidence that the town ever denied those variances. Thus, the defendant already is in the same position it would have been in had the Girolamettis made a dedication of land to the town.

We conclude that the court's findings that the Girolamettis did not breach the stipulation and that the defendant did not sustain damages were not clearly erroneous. Consequently, the court properly declined to issue the requested order for compliance.

## IV

The defendant's last claim is that the court improperly failed to conclude that pursuant to § 51-183b,[7] the judgments in this case were void for lateness. We disagree.

---

[7] General Statutes § 51-183b provides in relevant part that judges of the Superior Court in civil cases "shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

The following additional facts are necessary for our resolution of the defendant's claim. The cases were tried in January, 1998, and the parties submitted post-trial briefs in February, 1998. In November, 1998, the clerk of the court contacted the parties to request their consent to an extension of time for the rendering of judgment. All of the parties submitted written waivers of the statutory time limit to the court. The attorney for the town worded his waiver letter as follows: "Please allow this letter to confirm that the Plaintiff, Town of Ridgefield, has no objection to granting a 120 day extension relative to [*Ridgefield* v. *Eppoliti Realty Co.*, CV 95-0322396S]." On December 1, 1999, the court issued a memorandum of decision for both cases. On December 6, 1999, the defendant filed a motion to set aside the judgments as void for lateness. In its December 14, 1999 objection to the defendant's motion, the town argued that "the totality of circumstances makes it abundantly clear that whatever extension the court might have been requested would have been granted by the [town]" and also stated that the objection was the town's "formal written consent to the timing of the trial court's rendering of its judgment." After a hearing, the defendant's motion was denied by the court, *Radcliffe, J.*

In its motion to set aside and on appeal, the defendant argues that the town via its waiver letter consented only to an extension until March, 1999, and, therefore, that the court's December 1, 1999 judgments are void for lateness. It claims that pursuant to our Supreme Court's holding in *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 577 A.2d 1047 (1990), the town's subsequent consent to the late judgment was ineffective.

Whether a waiver has occurred is a factual question, reviewable under the clearly erroneous standard. See *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 261 n.15, 708 A.2d 1378 (1998); *Majernicek* v. *Hartford*

*Casualty Ins. Co.*, 240 Conn. 86, 96, 688 A.2d 1330 (1997); *Statewide Grievance Committee* v. *Brown*, 67 Conn. App. 183, 188, 786 A.2d 1140 (2001), cert. denied, 259 Conn. 919, 791 A.2d 568 (2002); *DiBello* v. *Barnes Page Wire Products, Inc.*, 67 Conn. App. 361, 371, 786 A.2d 1234 (2001), cert. granted on other grounds, 260 Conn. 915, 796 A.2d 560 (2002) (appeal withdrawn June 26, 2002); *Infante* v. *Mansfield Construction Co.*, 47 Conn. App. 530, 538, 706 A.2d 984 (1998). Similarly, the question of what the town's counsel intended in his waiver letter to the court also is a question of fact, subject to the clearly erroneous standard. *Bank of Boston Connecticut* v. *Avon Meadow Associates*, supra, 40 Conn. App. 540.

Section 51-183b requires a court to render judgment within 120 days of the completion of trial, but also allows the parties to waive that requirement. See footnote 7. Cases interpreting the statute have established "that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . We have characterized a late judgment as voidable rather than as void . . . and have permitted the lateness of a judgment to be waived by the conduct or the consent of the parties. . . . Thus, if both parties simultaneously expressly consent to a late judgment, either before the judgment is issued, or immediately thereafter, the judgment is valid and binding upon both parties, despite its lateness. Express consent, however, is not required. If a late judgment has been rendered and the parties fail to object seasonably, consent may be implied. . . . Because consent may be implied from a failure to object seasonably after a delayed judgment has been rendered, these cases do not support the [notion] that § 51-183b invariably requires the *prior* consent of both parties in order to waive the time limits the statute imposes.

"These implied consent cases establish that an unwarranted delay in the issuance of a judgment does not automatically deprive a court of personal jurisdiction. Even after the expiration of the time period within which a judge has the power to render a valid, binding judgment, a court continues to have jurisdiction over the parties until and unless they object. It is for this reason that a late judgment is merely voidable, and not void." (Citations omitted; emphasis in original.) *Waterman* v. *United Caribbean, Inc.*, supra, 215 Conn. 692–93.

In *Waterman*, as in this case, the trial court contacted the parties prior to judgment and asked them to consent to an extension of time. Id., 690. Both by telephone and by letter, the defendants refused to agree to an extension. Id. The trial court thereafter issued an abbreviated memorandum of decision indicating that its ruling substantially was in favor of the defendants. Id. The defendants then attempted to consent to the late rendering of the judgment. Id. On appellate review, our Supreme Court reversed this court's holding that the defendants' belated consent was effective, reasoning that "the defendants' initial refusal to consent to a late judgment deprived the court of personal jurisdiction over them." Id., 694. "By their conduct, they made the judgment, when rendered, not merely voidable, but void. Although a voidable judgment may be cured, a void one may not. The defendants' execution of a consent following the late judgment's issuance therefore had no legal effect." Id.

In this case, the defendant claims that the town's letter to the court amounted not only to a consent to an additional 120 days in which the court could render judgment, but also to an implicit refusal to consent to any further extensions. Relying on *Waterman*, the defendant argues that after the initial 120 day extension period had run, the court's judgment was void rather

than voidable, and the town's subsequent consent to the judgment therefore was ineffective. In so arguing, the defendant asks this court to relitigate the issue of the town's intent.

At the hearing on the defendant's motion to set aside the judgment, the town's attorney stated that he drafted his consent letter using language that was responsive to the request that he had received from the court clerk in the form of a voice mail. In other words, in stating that the town did not object to a 120 day extension, he did not intend to limit the town's consent to only an extra 120 days, as argued by the defendant. It was established at the hearing that the court's file did not contain any further correspondence from the town indicating an affirmative refusal to consent once the additional 120 days had expired. The town also noted that it had no reason to refuse to consent to the extension because, having brought its action only for the purpose of obtaining clarification regarding the parties' rights to the parcel, it really had nothing to lose from a judgment in the defendant's favor. On the basis of the foregoing, the court found "that there is certainly a waiver here [by the town] either explicitly or by conduct," and, consequently, denied the defendant's motion to set aside the judgment.

Because there is evidence in the record supporting the court's findings that the town did not intend to limit its waiver to an additional 120 days and that it subsequently consented to the further delay in the rendering of the judgments, we conclude that those findings were not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.