******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA BRUNO *v.* THE TRAVELERS
COMPANIES ET AL.
(AC 38284)

Keller, Mullins and Harper, Js.

*Argued January 11—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of
Danbury, Truglia, J.)

*Lisa Bruno*, self-represented, the appellant
(plaintiff).

*Stephen E. Goldman*, with whom, on the brief, was
*Jonathan E. Small*, for the appellees (named defendant
et al.).

*Opinion*

MULLINS, J. The plaintiff, Lisa Bruno, appeals from the judgment of the trial court, rendered in favor of the defendants, The Travelers Companies and The Travelers Home and Marine Insurance Company,[1] after the court (1) granted the defendants' second motion to strike counts three through nine of the plaintiff's amended complaint on the ground of absolute immunity,[2] and (2) granted the defendants' motion for summary judgment on counts one and two on the grounds that those counts were brought outside of the two year limitation period contained in the parties' contract of insurance.[3] On appeal, the plaintiff claims that the court's judgment was improper because (1) "absolute immunity implicates the court's subject matter jurisdiction," and, therefore, the court erred in allowing the defendants to raise that issue via a motion to strike, (2) the defendants were not immune to suit on the basis of an absolute privilege, and (3) the plaintiff's claims were not time barred.

After review, we conclude that the litigation privilege provides an absolute immunity from suit and, thus, implicates the trial court's subject matter jurisdiction.[4] As such, the plaintiff's causes of action against the defendants are barred. We further conclude that the court should have dismissed the plaintiff's original complaint, rather than permit her to replead, after it determined that the doctrine of absolute immunity applied to her entire complaint. Accordingly, the form of judgment is improper, and we, therefore, reverse the judgment of the trial court and remand the matter with direction to render a judgment of dismissal.

The trial court set forth the following relevant facts in its memorandum of decision as to the defendants' first motion to strike. "The plaintiff and . . . Stephen Bruno were divorced in 2008 by order of the Danbury Superior Court . . . . [In her complaint,] [t]he plaintiff alleges that on February 24, 2014, a hearing was held in Danbury Superior Court in her dissolution of marriage action on a postjudgment motion brought by her former husband involving court-ordered alimony and support payments. The plaintiff alleges that an employee or representative of [the defendants] . . . appeared at this hearing in response to a subpoena issued by her former husband's attorney. The plaintiff further alleges that the defendants' employee made certain statements at this hearing and produced two letters issued by the defendants that he 'caused to be entered into evidence,' both of which, the plaintiff claims, were defamatory to her. The plaintiff alleges that the defendants intentionally and wrongfully allowed their employee to testify at the hearing and produce the letters in question, and that these actions have given rise to several causes of action against them for damages.

"The plaintiff claims that as a result of the defendants' actions or, alternatively, as a result of the defendants' failure to contest the subpoena and take actions to block her former husband's efforts to compel their employee's testimony, they are liable to her . . . . The plaintiff seeks compensatory, general, punitive, and consequential damages from the defendants for these alleged transgressions."

On the basis of the aforementioned letters and the employee's testimony, both of which the plaintiff believed contained defamatory statements about her, the plaintiff commenced this action against the defendants in seven counts: (1) defamation by libel per se, (2) violation of the Connecticut Insurance Information and Privacy Protection Act, General Statutes § 38a-975 et seq., (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., (6) vicarious liability, and (7) negligence.

The defendants, thereafter, filed a motion to strike each count that had been filed against them on the ground that they were entitled to absolute immunity due to the applicability of the litigation privilege. The plaintiff then filed a responsive pleading. Subsequently, the defendants filed a reply memorandum in which they argued, in part, that the court's subject matter jurisdiction was implicated by the doctrine of absolute immunity. On January 5, 2015, the court granted the defendants' motion to strike each count of the complaint on the ground of absolute immunity, concluding that the litigation privilege applied. The court, however, did not address the issue of subject matter jurisdiction.

Given that the court had granted the defendants' motion to strike, the plaintiff exercised her option to replead and filed an amended complaint pursuant to Practice Book § 10-44. In her amended complaint, she alleged the following causes of action against the defendants: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., (4) defamation by libel per se, (5) violation of the Connecticut Insurance Information and Privacy Protection Act, General Statutes § 38a-975 et seq., (6) intentional infliction of emotional distress, (7) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., (8) vicarious liability, and (9) negligence.

In response to the amended complaint, the defendants filed a motion for judgment on all counts of the stricken complaint and requested, in the alternative, that the court strike counts three through nine of the amended complaint on the ground that it failed to cure the deficiencies in her original complaint. The defen-

dants also requested summary judgment on the two new counts of the amended complaint, set forth as counts one and two, on the basis that they were time barred by the limitation set forth in the defendants' contract of insurance with the plaintiff.[5] The court granted the motion and rendered judgment in favor of the defendants. This appeal followed.

The dispositive issue raised by the plaintiff concerns her claim that absolute immunity implicates the trial court's subject matter jurisdiction. She contends that the court erred by not ordering the defendants to file a motion to dismiss rather than permit them to raise the issue of absolute immunity and the court's subject matter jurisdiction in a motion to strike. We agree with the plaintiff's contention that absolute immunity implicates the trial court's subject matter jurisdiction. See *Tyler* v. *Tatoian*, 164 Conn. App. 82, 87, 137 A.3d 801 ("the doctrine of absolute immunity concerns a court's subject matter jurisdiction" [internal quotation marks omitted]), cert. denied, 321 Conn. 908, 135 A.3d 710 (2016); *Perugini* v. *Giuliano*, 148 Conn. App. 861, 873, 89 A.3d 358 (2014) (same); see also *Stone* v. *Pattis*, 144 Conn. App. 79, 95–100, 72 A.3d 1138 (2013) (claim for negligent infliction of emotional distress against certain attorney-defendants for communications made while defending against federal lawsuit was barred by absolute immunity because communications were absolutely privileged; trial court properly dismissed claim for lack of subject matter jurisdiction).

We disagree, however, on what was the appropriate action for the trial court to take once this issue, or a doctrine implicating subject matter jurisdiction, was raised. Here, once the defendants raised the issue of absolute immunity, based on the application of the litigation privilege, and the court then determined that the plaintiff's initial complaint was barred by the doctrine of absolute immunity, the court should have dismissed the case against the defendants, essentially treating the motion to strike as a motion to dismiss.[6] See Practice Book § 10-30 (a) (1) ("[a] motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter"); see generally *Branford* v. *Monaco*, 48 Conn. App. 216, 219 n.4, 709 A.2d 582 (although "[t]he defendants asserted their claim of lack of subject matter jurisdiction as a special defense . . . [a] motion to dismiss is the proper procedural device to raise a claim of lack of subject matter jurisdiction"), cert. denied, 245 Conn. 903, 719 A.2d 900 (1998).

"[S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . and a judgment rendered without subject matter jurisdiction is void. . . . Further, it is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court." (Internal

quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bialobrzeski*, 123 Conn. App. 791, 798, 3 A.3d 183 (2010). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Milford Power Co.*, *LLC* v. *Alstom Power*, *Inc.*, 263 Conn. 616, 624–25, 822 A.2d 196 (2003).

"As the doctrine of absolute immunity concerns a court's subject matter jurisdiction . . . we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity." (Internal quotation marks omitted.) *Tyler* v. *Tatoian*, supra, 164 Conn. App. 87.

"Connecticut has long recognized the litigation privilege . . . [and has extended it] to judges, counsel and witnesses participating in judicial proceedings." (Citation omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 536–37, 69 A.3d 880 (2013); see also *Villages*, *LLC* v. *Longhi*, 166 Conn. App. 685, 699, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016).

In *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 79 A.3d 60 (2013), our Supreme Court explained: "In *Simms*, we noted that the doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. [*Simms* v. *Seaman*, supra, 308 Conn.] 531. The doctrine then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses. Id., 532. We further noted that, [l]ike other jurisdictions, Connecticut has long recognized the litigation privilege, and that [t]he general rule is that defamatory words spoken upon an occasion absolutely privileged, though spoken falsely, knowingly, and with express malice, impose no liability for damages recoverable in an action in slander . . . . Id., 536.

"Furthermore, in *Rioux* v. *Barry*, [283 Conn. 338, 343–44, 927 A.2d 304 (2007),] we explained that [t]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . [T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance

from filing a complaint. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit. . . .

"In *Simms* v. *Seaman*, supra, 308 Conn. 540–45, we further discussed the expansion of absolute immunity to bar retaliatory civil actions beyond claims of defamation. For example, we have concluded that absolute immunity bars claims of intentional interference with contractual or beneficial relations arising from statements made during a civil action. See *Rioux* v. *Barry*, supra, 283 Conn. 350–51 (absolute immunity applies to intentional interference with contractual relations because that tort comparatively is more like defamation than vexatious litigation). We have also precluded claims of intentional infliction of emotional distress arising from statements made during judicial proceedings on the basis of absolute immunity. See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 263–64, 597 A.2d 807 (1991). Finally, we have most recently applied absolute immunity to bar retaliatory claims of fraud against attorneys for their actions during litigation. See *Simms* v. *Seaman*, supra, 545–46. In reviewing these cases, it becomes clear that, in expanding the doctrine of absolute immunity to bar claims beyond defamation, this court has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process. Indeed, we recently noted that [c]ommentators have observed that, because the privilege protects the communication, the nature of the theory [on which the challenge is based] is irrelevant." (Emphasis omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 627–29.

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Villages, LLC* v. *Longhi*, supra, 166 Conn. App. 699.

In the present case, there is no doubt that the statements made and the documents produced by representatives of the defendants were made or produced in a formal judicial proceeding. The proceeding was a hearing in the Connecticut Superior Court, before a judge of the Superior Court, and the representative of the defendants was there as a witness, *appearing in response to a subpoena* by the plaintiff's former husband, who was a party to the proceeding. The documents produced also were in response to an issued

subpoena.

As to the relevance of the statements or documents produced by the defendants in response to the issued subpoena and the questions that were asked during trial, we note that our law provides for a very generous test for relevance. See *Gallo* v. *Barile*, 284 Conn. 459, 467, 935 A.2d 103 (2007). We also note that the defendants are not alleged to have acted outside of the subpoena or to have done anything more than answer questions and produce documents that were asked or requested of them during the hearing. See *O'Coin* v. *Woonsocket Institution Trust Co.*, 535 A.2d 1263, 1267 (R.I. 1988) (In holding that absolute privilege applied in this case in which the defendant bank, pursuant to a subpoena duces tecum, produced documents and a witness to testify in relation thereto, the Supreme Court explained: "[W]hen a witness is asked a question, and no objection is made thereto, or, if made, is overruled, it is the duty of the witness to answer. The witness is not charged with the duty of determining whether the information sought is relevant or material. Such questions are solely the province of the trial court . . . and the witness cannot be held liable in a civil suit for his answer. . . . To hold otherwise would be manifestly unfair to the witness, who often, but not always is untrained in legal matters, timid, and appears at the behest of some third party." [Citations omitted.]).

As explained by the trial court in its memorandum of decision as to the defendants' first motion to strike, "the parties' respective pleadings set forth the following undisputed facts. First, the plaintiff's former husband attempted to introduce the evidence in question during a part of the hearing related to alimony. The plaintiff did not object to introduction of the letters into evidence at this time but did object to the witness' testimony on relevancy grounds. The court . . . agreed and sustained the plaintiff's objection to the witness' testimony on the ground that it was not relevant to this question [of alimony]. [Counsel for the plaintiff's] former husband . . . then attempted to introduce the . . . testimony [of the defendants' representative] later in the same hearing on the court's consideration of 'shelter expenses,' which the court permitted. Given these facts, and considering the rule that relevancy must be generously construed, the court finds that the statements were relevant to the matters at hand. The court therefore finds that the oral testimony of the defendants' employee and the contents of the two letters provided by him at the hearing are covered by the doctrine of absolute immunity." We agree with the trial court.

The defendants produced documents and provided testimony specifically in response to the subpoena issued by the plaintiff's former husband. The defendants' testimony and disclosures were made in a formal judicial proceeding, and they were relevant to that pro-

ceeding. Therefore, we conclude the court properly determined that the documents and testimony are protected by the doctrine of absolute immunity, as applied to the litigation privilege.

We further conclude, however, that, because absolute immunity protects a party from suit and implicates the trial court's subject matter jurisdiction, once the trial court determined that the doctrine of absolute immunity applied in this matter, it should have dismissed the plaintiff's original complaint against the defendants. The plaintiff should not have been given the opportunity to replead because the court was without jurisdiction to permit a repleading. Accordingly, any action taken after the court determined that absolute immunity applied to all of the plaintiff's causes of action against the defendants is void; the court had no jurisdiction. See *State* v. *Ramos*, 306 Conn. 125, 142, 49 A.3d 197 (2012) ("'Under well established law, it is clear that the trial court's lack of subject matter jurisdiction to hear the motion to withdraw rendered void its denial of that motion. See *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 725, 894 A.2d 259 (2006); see also 1 A. Freeman, Judgments (5th Ed. 1925) § 322, pp. 643–44 ("A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. . . . It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void.").' *State* v. *Reid*, [277 Conn. 764, 776, 894 A.2d 963 (2006)]"); *Scarfo* v. *Snow*, 168 Conn. App. 482, 484, 146 A.3d 1006 (2016) (despite trial court's thorough memorandum of decision, when form of judgment improper due to lack of subject matter jurisdiction, judgment must be reversed and matter remanded to trial court with direction to dismiss case).

In sum, because the defendants were entitled to absolute immunity, the court lacked jurisdiction, and the court, therefore, should have dismissed the case.

The form of the judgment is improper, the judgment is reversed, and the case is remanded with direction to render judgment of dismissal.

In this opinion the other judges concurred.

[1] In her amended complaint, the plaintiff also set forth a single count against her former husband, Stephen Bruno. This appeal does not involve that cause of action. Accordingly, we refer to The Travelers Companies and The Travelers Home and Marine Insurance Company as the defendants in this appeal.

[2] In *Simms* v. *Seaman*, 308 Conn. 523, 525 n.1, 69 A.3d 880 (2013), "[t]he terms 'absolute immunity' and 'litigation privilege' [were] used interchangeably throughout [that] opinion. See, e.g., R. Burke, 'Privileges and Immunities in American Law,' 31 S.D. L. Rev. 1, 2 (1985) (defining 'privilege' as 'a special favor, advantage, recognition or status' and 'immunity' as 'a special exemption from all or some portion of the legal process and its judgment')." It appears that other cases and treatises also use the term "absolute privilege" interchangeably with those previously mentioned. See, e.g., *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007) ("[t]he effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged

statement even if the statement is false and malicious"); 53 C.J.S. 166, Libel & Slander: Injurious Falsehood § 112 (2005) ("[a]bsolute privilege confers immunity from liability for defamation regardless of motive"). Despite the frequent interchangeability of these terms, we have tried, where possible, to distinguish between the terms "absolute immunity" and "litigation privilege" or "absolute privilege."

[3] The defendants filed a single pleading, labeled "motion for judgment," combining a second motion to strike and motion for summary judgment.

[4] Like sovereign immunity, the doctrine of absolute immunity "*protects against suit* as well as liability—in effect, *against having to litigate at all.*" (Emphasis added.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 786, 865 A.2d 1163 (2005). "Our determination is dictated by the underlying purpose of the immunity afforded at common law to those who provide information in connection with judicial and quasi-judicial proceedings, namely, that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless *faced the threat of suit*. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings *is the same as the purpose of the sovereign immunity enjoyed by the state.*" (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 786–87. "[S]overeign immunity . . . includes immunity from suit and immunity from liability . . . . Immunity from suit on the basis of sovereign immunity implicates subject matter jurisdiction . . . ." (Citation omitted.) *Edgerton* v. *Clinton*, 311 Conn. 217, 227 n.9, 86 A.3d 437 (2014).

[5] We note that count three of the amended complaint also appears to allege a new cause of action from those alleged in the original complaint.

[6] "[A] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 350, 63 A.3d 940 (2013). "By contrast, the motion to strike attacks the sufficiency of the pleadings. . . . There is a significant difference between asserting that a plaintiff *cannot* state a cause of action and asserting that a plaintiff *has not* stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike." (Citation omitted; emphasis added; internal quotation marks omitted.) *Pecan* v. *Madigan*, 97 Conn. App. 617, 621, 905 A.2d 710 (2006), cert. denied, 281 Conn. 919, 918 A.2d 271 (2007).

Given that absolute immunity implicates subject matter jurisdiction, a motion to dismiss is a proper vehicle through which to raise a claim of absolute immunity. By the same token, because this doctrine implicates subject matter jurisdiction, the particular manner through which it is raised is not dispositive.