******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHERRI BRADY ET AL. *v.* BONNIE
BICKFORD ET AL.
(AC 38581)

Lavine, Elgo and Beach, Js.

*Syllabus*

The plaintiffs, S and her husband, J, sought to recover damages for, inter
alia, intentional infliction of emotional distress, negligent infliction of
emotional distress and defamation from the defendants, the parents of
S, arising out of a long-running family dispute. The defendants filed
special defenses, which alleged that some of the tortious acts alleged
in the plaintiffs' complaint were barred by the applicable statute of
limitations. After the trial court granted the defendants' motion for
summary judgment as to certain claims, the remaining counts were tried
to the court, which found that the acts or omissions complained of in
the remaining counts that had occurred before January, 2008, were,
absent a tolling of the limitations period, barred as untimely. The plain-
tiffs had argued that the limitations period was tolled by the defendants'
continuing course of conduct, some of which occurred within three
years of January, 2008, and included testimony at an August, 2009 hearing
before the Freedom of Information Commission by the defendant B, S's
mother. The defendants had contended that all of B's conduct after
January, 2008, was protected by the litigation privilege or absolute immu-
nity, and, thus, no actionable conduct occurred during the limitations
period to constitute a continuing course of conduct that tolled the
statute of limitations. The court agreed with the defendants and rendered
judgment for the defendants, from which the plaintiffs appealed to this
court. They claimed, inter alia, that the trial court improperly permitted
the defendants to file a motion for summary judgment after the case
had been scheduled for trial pursuant to a scheduling order. *Held*:

1. The trial court did not abuse its discretion in granting the defendants'
motion to modify the scheduling order and permitting the defendants
to file a motion for summary judgment; that court granted the defendants'
unopposed request to modify the original scheduling order before the
case was scheduled for trial, which did not disrupt the court's docket,
although the plaintiffs claimed that the filing of a motion for summary
judgment delayed trial, the plaintiffs themselves contributed to any delay
by filing their own requests for continuances and mediation, the defen-
dants showed good cause by representing that the case could be resolved
on legal grounds, thereby obviating the need for trial, and the plaintiffs
did not demonstrate that they were harmed or prejudiced by the fact that
the defendants were allowed to file their motion for summary judgment.

2. The plaintiffs could not prevail on their claim that the trial court improperly
allowed the defendants to assert the litigation privilege during the trial
to bar their claims because the defendants failed to plead absolute
privilege as a special defense: the plaintiffs' claim that the defendants
waived the litigation privilege during the argument on their motion for
summary judgment and that the defendants' waiver operated throughout
the entire action was unavailing, as the defendants, who withdrew privi-
lege as a basis for their motion for summary judgment but did not
withdraw the defense of litigation privilege or absolute immunity with
respect to the issues to be tried, did not intentionally relinquish their
right to raise the litigation privilege at trial when they argued their
motion for summary judgment; moreover, this court found unavailing
the plaintiffs' claims that it was improper for the trial court to construe
the defendants' midtrial assertion of the litigation privilege as a ground
to exclude evidence to be a motion to amend their pleadings to conform
to the evidence, and that the defendants failed to plead the litigation
privilege as a defense and failed to file a motion in limine to preclude
certain evidence as required by the trial management order, as the
plaintiffs could not claim surprise when the defendants raised the matter
of the litigation privilege in their motion for summary judgment two
years before trial commenced and the plaintiffs addressed the issue in
their response, and subject matter jurisdiction cannot be waived by

either party and can be raised at any stage of the proceedings.

3. The plaintiffs could not prevail on their claim that the trial court improperly concluded that their intentional infliction of emotional distress claim was barred by the applicable statute of limitations, which was based on their claim that the statement made by B at the August, 2009 hearing before the commission was not relevant to the proceedings and, therefore, was not privileged; B's testimony before the commission was absolutely privileged, as the commission was a quasi-judicial body and statements made before it were absolutely privileged if relevant to the issue before the commission, the testimony, which repeated her complaints regarding alleged personal and professional wrongdoing by J, bore some relevance to the purpose of the hearing, and because B's testimony was privileged, the plaintiffs could not establish a continuing course of conduct that barred the application of the statute of limitations to their claim.

Argued September 8, 2017—officially released February 27, 2018

*Procedural History*

Action to recover damages for, inter alia, intentional infliction of emotional distress, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Cosgrove, J.*, granted the defendant's motion to modify a scheduling order and granted the defendants permission to file a motion for summary judgment; thereafter, the court, *Zemetis, J.*, granted in part the defendants' motion for summary judgment and rendered judgment thereon; subsequently, the matter was tried to the court, *Zemetis, J.*; judgment for the defendants, from which the plaintiffs appealed to this court. *Improper form of judgment; judgment directed.*

*Michael E. Satti*, with whom was *Rebecca Malinguaggio*, for the appellants (plaintiffs).

*Michael T. Vitali*, for the appellees (defendants).

*Opinion*

LAVINE, J. The claims of emotional distress and defamation at issue in this appeal arise out of a long-running family dispute involving malicious gossip and unsubstantiated allegations of police misconduct that led to two state police internal affairs investigations, two arrests of the same defendant, a protective order, intervention by the Attorney General and the Department of Public Safety, a complaint to the Freedom of Information Commission (commission), and a daughter's refusing further contact with her parents. Following a four day trial to the court, the court concluded that the statements at issue were protected by the litigation privilege and rendered judgment in favor of the defendants. The litigation privilege affords absolute immunity to the speaker and implicates the court's subject matter jurisdiction.[1] We reverse the judgment of the trial court and remand the case with direction to render a judgment of dismissal.

The plaintiffs, Sherri Brady (Sherri) and James Brady (James), appeal from the judgment of the court rendered in favor of the defendants, Bonnie Bickford and Kenneth Bickford, who are Sherri's parents. On appeal, the plaintiffs claim that the trial court abused its discretion by permitting the defendants to file a motion for summary judgment in contravention of the scheduling order and to assert the litigation privilege to bar the plaintiffs' claims, and improperly concluded that their claims of intentional infliction of emotional distress were barred by the statute of limitations and their claim of intentional infliction of emotional distress was barred under the continuing course of conduct doctrine and by the statute of limitations.

In its memorandum of decision following trial, which was held in August, 2015, the court, *Zemetis*, *J.*, made extensive findings of fact pertaining to the plaintiffs' claims. The plaintiffs live in Groton Long Point, are married to one another, and have two children. Sherri is a school teacher; James is a retired state police trooper.[2] The defendants are married to each other and live in Stonington. The parties enjoyed a close relationship until unsubstantiated family gossip led to a state police internal affairs investigation of James in 2000 (2000 investigation). The parties' relationship was further damaged in 2007 when the defendants caused a second state police internal affairs investigation of James to be initiated (2007 investigation). Both investigations found that the allegations of wrongdoing were unsubstantiated.

The factual history underlying the plaintiffs' appeal begins in the summer of 2000 when the defendants hosted a family gathering. Given that the events unfolded over a period of fifteen years, we set them out in some detail to provide context for the plaintiffs'

claims. During the family gathering, one of Sherri's cousins speculated to others that Sherri, who was then pregnant, was the victim of spousal rape. The cousin later repeated her suspicion to a municipal police officer who reported the accusation to the state police, prompting the 2000 investigation. The defendants were interviewed during the 2000 investigation and stated that they too suspected James of spousal abuse. The plaintiffs learned of the 2000 investigation when state police investigators came to their home days after Sherri had given birth. Sherri denied the allegations against James and was distraught. James arrived during the interview and was angered by the allegations. The investigators found that there was no substance to the allegations against James, and the 2000 investigation was closed.

The court found that the plaintiffs had turned to the defendants for consolation and guidance during the 2000 investigation. The defendants claimed ignorance of the 2000 investigation, despite knowing of it and having offered evidence against James. In 2004, Sherri "perceived" troubling behavior on the part of the defendants, particularly Kenneth Bickford's consumption of alcohol, when they were babysitting her children. She tried to craft a solution but eventually determined that it was best to sever the plaintiffs' relationship with Kenneth Bickford. She forbade Kenneth Bickford to come to the plaintiffs' home and formalized her decision in a certified letter to him. The defendants did not accept Sherri's decision. On Halloween, 2005, the defendants drove by the plaintiffs' home, which disturbed Sherri, and she asked James to complain to the Groton Long Point police (police). As a result, the police explained Sherri's certified letter to the defendants and cautioned them to stay away from the plaintiffs' property. Bonnie Bickford, however, went to the plaintiffs' home in December, 2005, which upset Sherri. The plaintiffs reported the incident to the police.

The court found that the police report regarding the December, 2005 incident stated that James "requested that Bonnie Bickford be warned to stay off the property. [James] was asked why he did not call when [Bonnie Bickford] was at the property. [James] stated [that Sherri] wished [Bonnie Bickford] not be arrested." (Internal quotation marks omitted.) The court found that the police report concerning the December, 2005 incident does not contain a false statement by James, as Bonnie Bickford later alleged.

Following the December, 2005 incident, Bonnie Bickford went to the police and complained that James mentally and physically abused Sherri. Kenneth Bickford accused James of using his contacts in law enforcement inappropriately. The police investigated the abuse complaints by interviewing Sherri, who denied the accusations of abuse. Although the plaintiffs did not want

Bonnie Bickford to be arrested, the police sought a warrant for her arrest and arrested her in April, 2006.

In March, 2006, the defendants sent Sherri flowers and a birthday card at her place of employment. Sherri purposely had kept her new employment from her parents and felt harassed by their contact. She telephoned the resident state trooper for assistance. Trooper Robert Scavello investigated Sherri's complaint against Bonnie Bickford. As a result of the investigation, Bonnie Bickford was arrested again.

The court also found that in the fall of 2006, the defendants learned for the first time that the accusations of spousal rape of Sherri's cousin were the basis of the 2000 investigation. The defendants contacted the office of then Attorney General Richard Blumenthal and claimed that James' personal and professional misconduct needed to be investigated. In January, 2007, they met with Jeffrey Meyers, an investigator from Blumenthal's office. They suggested that the 2000 investigation was inadequate or a cover-up. Blumenthal directed the Department of Public Safety (department) to conduct another investigation of James. Although none of the defendants' allegations concerned James' duties as a state trooper, the allegation that he had influenced investigations to secure Bonnie Bickford's arrests suggested that he had abused his position as a state trooper. Following a second internal affairs investigation, the state police issued a report dated December 19, 2007, concluding that the allegations of wrongdoing on the part of James were "unfounded."[3]

In 2009, the defendants attempted to obtain a copy of the 2007 investigation report, claiming that they needed it to prove to the plaintiffs that they had not initiated the 2000 investigation.[4] The defendants accused James of personal and professional criminal misconduct during the 2007 investigation, in their communications with Blumenthal, in letters written by their legal counsel, and in Bonnie Bickford's testimony at the August 19, 2009 commission hearing. The court found that, as with much of their testimony, the defendants' claimed basis for their actions did not hold up under close examination.

The department declined to give the defendants a copy of the 2007 investigation report because there was no evidence to support the claims of criminal wrongdoing. Counsel for the department explained to the defendants the statutory basis for the department's refusal to release the report. The defendants, however, appealed to the commission from the department's decision not to release the 2007 investigation report. The commission held a public hearing on August 19, 2009, to determine whether the 2007 investigation report was subject to disclosure. At the hearing, Bonnie Bickford testified that she filed a complaint against James on the ground that he had used his position as a state

trooper to have her arrested. The commission dismissed the defendants' complaint on February 24, 2010.[5]

The plaintiffs commenced the present action on January 14, 2011, and filed an amended complaint on August 3, 2011, which sounded in nine counts alleging intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, tortious invasion of privacy, and permanent injunctive relief. The defendants filed an answer in which they denied the material allegations of the amended complaint and alleged generally that the plaintiffs' claims were barred by the statutes of limitations set forth in General Statutes §§ 52-577[6] and 52-584.[7] In response to the plaintiffs' request to revise, on May 23, 2012, the defendants filed revised special defenses alleging in relevant part that "all tortious acts alleged in counts 1, 3, 4, 5, 6 and 7 to have been committed by the defendants prior to January 14, 2008, are barred by the three year statute of limitations set forth in [§ 52-577] . . . [and] all negligent acts alleged in count 2 to have been committed by the defendants prior to January 14, 2009, are barred by the two year statute of limitations set forth in [§ 52-584]." On August 10, 2012, the plaintiffs filed a reply to the defendants' special defenses, denying them and alleging that the continuing course of conduct doctrine applied to toll the statutes of limitations. The defendants did not respond to the plaintiffs' reply. The plaintiffs filed a certificate of closed pleadings and claimed the matter for the trial list on December 18, 2012.

After securing permission from the court to file a motion for summary judgment, the defendants filed the motion on August 20, 2013. Judge Zemetis granted the motion for summary judgment as to counts six through nine of the amended complaint, which alleged invasion of privacy and sought permanent injunctive relief. The court denied the motion for summary judgment as to counts one through five of the amended complaint, which alleged intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. The case was tried to the court in August, 2015.

Following the presentation of evidence, the court found that paragraph 5 of count one contains the plaintiffs' allegations of wrongdoing against Bonnie Bickford, which are realleged in subsequent counts. The allegations concern Bonnie Bickford's tortious acts in two time periods: acts that Bonnie Bickford committed between October 31, 2005, and March 15, 2006, subparagraphs (a) to (h) of paragraph 5, and acts committed between January, 2007, and February, 2010, subparagraphs (i) to (m) of paragraph 5. The first set of allegations concerns Bonnie Bickford's interaction with Sherri. The second set concerns her interactions with the attorney general's office, the state police internal affairs division, and the commission regarding criminal acts James allegedly committed and his alleged abuse

of his authority and office as a state trooper. The defendants pleaded that some of the allegations were barred by the applicable statute of limitations. In reply, the plaintiffs alleged that the continuing course of conduct doctrine tolled the running of the statutes of limitations because Bonnie Bickford's allegedly tortious conduct continued when she testified before the commission. The defendants did not file a response to the continuing course of conduct reply; that is, they did not allege that Bonnie Bickford's testimony before the commission was protected by the litigation privilege.

In its memorandum of decision, the court quoted language from our Supreme Court, which noted that the "purposes of statutes of limitation include finality, repose and avoidance of stale claims and stale evidence." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 322, 94 A.3d 553 (2014). It found that the plaintiffs had served the present action on the defendants on January 14, 2011, and that the acts or omissions complained of that had occurred before January 14, 2008, were, absent a tolling of the limitations period, barred as untimely.

The plaintiffs had argued that the limitations period was tolled by the defendants' continuing course of conduct, some of which occurred within three years of January 14, 2008, such as the March 24, 2009 correspondence from the defendants' lawyer to the department seeking a copy of the 2007 investigation report, the defendants' May 4, 2009 complaint to the commission seeking a copy of the 2007 investigation report, Bonnie Bickford's testimony at the August 19, 2009 commission hearing, and the February 24, 2010 commission decision. The defendants had contended that all of Bonnie Bickford's post-January 14, 2008 conduct was protected by the litigation privilege or absolute immunity. Because her statements were privileged, the defendants argued, no actionable conduct occurred during the limitation of action period to constitute a continuing course of conduct that tolled the statute of limitations. The court agreed with the defendants.

The court found that Bonnie Bickford's complaints to the attorney general's office and statements made during the 2007 investigation and during the commission hearing, no matter how offensive, were absolutely privileged and could not support a claim of tortious conduct within the three year statute of limitations. Consequently, the court concluded that the older conduct set out in subparagraphs (a) to (h) of paragraph 5 of count one alleged no conduct within the limitation period, and hence, there was no continuing course of conduct and the plaintiffs' relief was barred by the statute of limitations. The court also concluded that absolute immunity and the applicable statute of limitations barred the plaintiffs' claims alleged in counts two through five of the amended complaint, negligent inflic-

tion of emotional distress and defamation as to Sherri and two counts of defamation as to James. The court, therefore, rendered judgment for the defendants, and the plaintiffs appealed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court, *Cosgrove, J.*, abused its discretion by granting the defendants permission to file a motion for summary judgment after the case had been scheduled for trial pursuant to the original scheduling order. We disagree.

The record reveals that the plaintiffs' counsel filed a proposed scheduling order on February 1, 2013, which stated that the pleadings were closed, that dispositive motions were to be filed by June 1, 2013, that responses to dispositive motions were to be filed by July 1, 2013, and that dispositive motions would be marked ready for argument soon thereafter. The case was to be ready for trial in September, 2013. The plaintiffs' counsel proposed several dates for trial between September, 2013, and January, 2014. The following statement, however, was attached to the proposed scheduling order: "Counsel attempted to reach [the defendants' counsel] on multiple occasions regarding the proposed order. It is unknown if [the defendants' counsel] agrees or disagrees with the dates on the proposed scheduling order." Judge Cosgrove approved the scheduling order proposed by the plaintiffs on February 5, 2013.

On August 15, 2013, counsel for the defendants filed a motion to modify the scheduling order. Counsel requested that the date for filing dispositive motions be extended to August 20, 2013, stating that the case was "not presently assigned for trial" and that the "case should be disposed of on legal grounds in the interest of judicial economy . . . ."[8] The plaintiffs did not oppose the motion to modify. Judge Cosgrove granted the motion and ordered the defendants to file their motion for summary judgment by August 20, 2013. The defendants complied. The plaintiffs filed their own motions for extension of time and responded to the defendants' motion for summary judgment on October 30, 2013. Both parties subsequently filed serial requests for extensions of time and memoranda of law regarding the summary judgment motion.[9] Judge Zemetis heard oral arguments on the motion for summary judgment on December 19, 2014, and, on March 13, 2015, issued a memorandum of decision, granting summary judgment in part. Trial commenced in August, 2015.

On appeal, the plaintiffs argue that Judge Cosgrove abused his discretion by permitting the defendants to file a motion for summary judgment because the defendants had failed to demonstrate good cause to do so. They also claim that permitting the defendants to file a motion for summary judgment necessitated a lengthy

continuance of the trial date.

We first set forth the applicable standard of review. "A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion." (Internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, 82 Conn. App. 715, 719, 846 A.2d 918 (2004). "Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . In deciding whether to grant a continuance, the court of necessity balances several factors, including the importance of effective case flow management and the relative harm or prejudice to both parties." (Citation omitted; internal quotation marks omitted.) Id., 720.

On the basis of our review of the foregoing procedural history, we conclude that the court did not abuse its discretion by permitting the defendants to file a motion for summary judgment. When the plaintiffs' counsel submitted the scheduling order for the court's approval on February 1, 2013, he acknowledged that he had not been able to communicate with the defendants' counsel and did not know whether counsel agreed to the proposed schedule. Although the defendants did not file their motion for summary judgment in accordance with Judge Cosgrove's order, they filed a request to modify the scheduling order, stating that the case had not yet been assigned for trial and that the case should be disposed of on legal grounds in the interest of judicial economy. The plaintiffs did not object to the motion to modify. Judge Cosgrove granted the motion to modify and issued a new scheduling order, which the plaintiffs themselves did not follow. The plaintiffs twice filed a request for permission to extend the time in which to file an objection to the motion for summary judgment. See footnote 9 of this opinion. Thereafter, both parties filed numerous motions for continuances and attempted to resolve their dispute through mediation.

At the time Judge Cosgrove ruled on the motion to modify the scheduling order, the case was not yet scheduled for trial and granting it did not disrupt the court's docket. Although the plaintiffs claim that the filing of a motion for summary judgment delayed trial, the plaintiffs themselves contributed to any delay by filing their own requests for continuances and mediation. As to good cause, the defendants represented that the case could be resolved on legal grounds, thereby obviating the need for trial. Moreover, the plaintiffs have not demonstrated that they were harmed or prejudiced by the fact that the court permitted the defendants to file their motion for summary judgment. We conclude that Judge Cosgrove did not abuse his discretion by granting the motion to modify the scheduling order and permitting the defendants to file a motion for summary judgment.

## II

The plaintiffs claim that it was error for Judge Zemetis to allow the defendants to assert the litigation privilege during trial to bar their claims because the defendants had failed to plead absolute privilege as a special defense.[10] The defendants argue that they were not required to plead absolute privilege as a special defense because it implicates subject matter jurisdiction. The plaintiffs cannot prevail on their claim of legal error. Although a conditional or qualified privilege is an affirmative defense in a defamation action and must be specially pleaded; *Miles* v. *Perry*, 11 Conn. App. 584, 594 n.8, 529 A.2d 199 (1987); the litigation privilege implicates a trial court's subject matter jurisdiction. *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 719, 161 A.3d 630 (2017). A claim that the court lacks subject matter jurisdiction "may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Guerra* v. *State*, 150 Conn. App. 68, 74–75, 89 A.3d 1028, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

Whether a claim is barred by absolute privilege is a question of law to be determined by the court. See generally *Nelson* v. *Tradewind Aviation, LLC*, 155 Conn. App. 519, 537, 111 A.3d 887, cert. denied, 316 Conn. 918, 113 A.3d 1016 (2015). If a court lacks subject matter jurisdiction, it must dismiss the case. See *Fennelly* v. *Norton*, 103 Conn. App. 125, 133–34, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

The following procedural history is relevant to the plaintiffs' claim. In their memorandum in support of their motion for summary judgment, the defendants stated that "all of the plaintiffs' claims are untimely and otherwise fail as a matter of law." They argued, in part, that any statements they may have made at the commission's August, 2009 hearing enjoy a shield of absolute immunity that is a complete defense to a defamation claim, as witnesses in a court of law are privileged when testifying in relation to the subject matter of the litigation.

When the parties appeared before Judge Zemetis to argue the motion for summary judgment, counsel for the plaintiffs argued that the court should not consider the defendants' position with respect to the litigation privilege because the defendants had failed to plead it as an affirmative defense. In response, counsel for the defendants stated that the defendants were withdrawing their privilege argument for purposes of the summary judgment motion.[11]

At trial, the plaintiffs proffered the testimony of retired State Police Lieutenant James Kenefick regarding the 2007 investigation. The testimony included Bonnie Bickford's statements accusing James of spousal abuse and professional wrongdoing. The defendants

objected to the testimony on the ground of relevance, asserting that Bonnie Bickford's statements regarding James' alleged wrongdoing were privileged.[12] The plaintiffs argued that the testimony was relevant to their claims of intentional and negligent infliction of emotional distress. The plaintiffs' counsel also claimed surprise, stating that the defendants had never pleaded absolute privilege as a special defense and had waived any reliance on it during the argument on the motion for summary judgment.

The court stated that it understood that the defendants were arguing that they did not need to plead the litigation privilege as a defense because they were asserting it as a basis to object to the admissibility of evidence. The court also stated that it was not in a position to rule on the matter because the parties had failed to raise it in their trial management documents. Given that Kenefick was present, however, the court permitted him to testify and reserved its decision. Kenefick testified about the 2007 investigation at length over two days.

In its memorandum of decision, the court stated that, although the plaintiffs argued at trial that the defendants had waived the litigation privilege by failing to plead it as a special defense and had withdrawn absolute privilege at the hearing on their motion for summary judgment, the defendants had asserted the litigation privilege at the start of trial and had sought to conform their pleadings to the proof. The court continued that it had reserved its decision on what it believed to be the defendants' motion to amend their pleadings. In its memorandum of decision, the court rejected the plaintiffs' assertion that the defendants had withdrawn absolute privilege from the case. It found that during argument on their motion for summary judgment, the defendants "did not withdraw, relinquish, abandon or waive that privilege from the entire case." (Emphasis omitted.)

In permitting the defendants to amend their pleading during trial, the court noted the factors a court is to consider when passing on a motion to amend. See *Congress Street Condominium Assn., Inc.* v. *Anderson*, 132 Conn. App. 536, 548, 33 A.3d 274 (2011) (*Alvord, J.*, dissenting) (factors to consider in passing on motion to amend are length of delay, fairness to opposing parties and negligence, if any, of party offering amendment; motion to amend is addressed to trial court's discretion which may be exercised to restrain amendment of pleadings to prevent unreasonable delay of trial).

The court concluded that the litigation privilege cannot be waived because it implicates subject matter jurisdiction; and the defendants' very late assertion of it did not unduly prejudice the plaintiffs because they were unable to assert their claims against the defendants by statements *other* than those covered by the litigation

privilege.

We now turn to the plaintiffs' claim that the court improperly permitted the defendants to amend their pleadings to allege the special defense of litigation privilege. We review such claims pursuant to an abuse of discretion standard. See id.

Practice Book § 10-50 provides in relevant part that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. *Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged.* Thus, accord and satisfaction, arbitration and award, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment . . . release, the statute of limitations and res judicata must be specially pleaded . . . ." (Emphasis added.)

Our Supreme Court has stated that "[p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them." (Internal quotation marks omitted.) *Foncello* v. *Amorossi*, 284 Conn. 225, 233, 931 A.2d 924 (2007). "Privilege is an affirmative defense in a defamation action and must, therefore, be specifically pleaded by the defendant." *Miles* v. *Perry*, supra, 11 Conn. App. 594 n.8.; see also *Monczport* v. *Csongradi*, 102 Conn. 448, 450–51, 129 A. 41 (1925); *Haight* v. *Cornell*, 15 Conn. 73, 82 (1842). "The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way." (Internal quotation marks omitted.) *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973). "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege, as in the bona fide discharge of a public or private duty." *Miles* v. *Perry*, supra, 594 n.8, citing *Flanagan* v. *McLane*, 87 Conn. 220, 222, 87 A. 727 (1913).

A

The plaintiffs claim that the defendants waived the litigation privilege during the argument on their motion for summary judgment and that the defendants' waiver operated throughout the entire case. We disagree.

"Waiver involves an intentional relinquishment of a known right. . . . [It] does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citation omitted; internal quotation marks omitted.) *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 102 Conn. App. 231, 239,

926 A.2d 1 (2007). Whether a waiver has occurred is a question of fact for the trier of fact. See *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 340, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). An appellate court will not disturb the trial court's finding unless it is clearly erroneous. See *Naftzger* v. *Naftzger & Kuhe, Inc.*, 26 Conn. App. 521, 526, 602 A.2d 606 (1992).

After reviewing the record, we agree with the court that the defendants withdrew privilege as the basis for their motion for summary judgment and relied on their statutes of limitations special defenses at that time. The court found that the defendants did not withdraw their defense of litigation privilege or absolute immunity with respect to the issues to be tried. We therefore conclude that the defendants did not intentionally relinquish their right to raise the litigation privilege at *trial* when they argued their motion for summary judgment.

B

The plaintiffs claim that it was improper for the court to construe the defendants' midtrial assertion of the litigation privilege as a ground to exclude evidence to be a motion to amend their pleadings to conform to the evidence. The plaintiffs argue that not only did the defendants fail to plead the litigation privilege as a defense, but also that they failed to file a motion in limine to preclude certain evidence as required by the trial management order. We disagree.

The plaintiffs contend that had the defendants pleaded absolute privilege as a special defense, they would have tried the case differently and saved attorney's fees. The defendants raised the matter of the litigation privilege in their motion for summary judgment that was filed in August, 2013, two years before trial commenced. In their second supplemental memorandum of law in opposition to the defendants' motion for summary judgment, the plaintiffs addressed the defendants' litigation privilege argument. They cannot plausibly claim surprise. If the plaintiffs were uncertain of the defendants' position, they could have raised it as an issue in their trial management document and brought it to the attention of the court, which they failed to do. More importantly, however, "[s]ubject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceedings." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007). Accordingly, because absolute immunity implicates the trial court's subject matter jurisdiction, once the trial court determined that the doctrine of absolute immunity applied, it should have dismissed the case.

III

The plaintiffs next claim that the court improperly concluded that their intentional infliction of emotional

distress claim was barred by the statute of limitations. They assert that the statement Bonnie Bickford made at the hearing before the commission was not relevant to the proceedings and, therefore, was not privileged. We disagree.

The plaintiffs' claim is predicated on Bonnie Bickford's testimony before the commission on August 19, 2009, when she stated "that's correct," in response to a leading question from her counsel. Counsel had asked Bonnie Bickford whether she had complained that James used his influence as a state trooper to have her arrested falsely on two occasions. The court found Bonnie Bickford's testimony "troubling" because the issue before the commission was whether the 2007 investigation report should be disclosed, not the basis of her complaint to the attorney general and state police. The court found that Bonnie Bickford's repeated assertion that James misused his office as a state trooper to influence the legal process implicates the arresting officer, the assistant state's attorney, and the Superior Court judge in a conspiracy to unlawfully arrest her.[13]

On appeal, the plaintiffs claim that Bonnie Bickford's testimony about the nature of her complaint was not relevant to the commission's decision-making, but rather was a gratuitous attempt to defame James one more time. The defendants argue that the statement was relevant to explain why the defendants wanted the 2007 investigation report.[14] Despite its finding that the purpose of the commission hearing was to determine whether the 2007 investigation report should be disclosed, the court found that the question and Bonnie Bickford's response were within the ambit of information relevant to the dispute before the commission. The court stated that the bounds of relevance with respect to the doctrine of absolute privilege are more generous than the relevance of evidence at trial. Bonnie Bickford's statements before the commission, therefore, were pertinent because she identified herself as the party whose complaints, and their nature, initiated the 2007 investigation. She explained to the commission that although she had initiated the 2007 investigation, she had never received written notification of the investigation's findings. Her statements at the commission hearing, therefore, were pertinent in the context of her request for the document, even though they were not pertinent to whether her request for the document should be granted. The court concluded that Bonnie Bickford's statements at the commission hearing, however offensive, are absolutely privileged and therefore cannot support a claim of tortious conduct within the three year statute of limitations.

"There is a long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as

they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . .

"The judicial proceedings to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character. . . . This privilege extends to every step of the proceeding until final disposition. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature." (Citations omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986). "The absolute privilege for statements made in the course of a judicial proceeding applies equally to defamation claims . . . and claims for intentional infliction of emotional distress." (Citation omitted.) *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007).

The plaintiffs do not challenge the court's finding that the commission was a quasi-judicial body and that statements made before it were absolutely privileged, if relevant to the issue before the commission. Instead, they claim that Bonnie Bickford's repeating of her complaints regarding alleged personal and professional wrongdoing by James was irrelevant to the issue before the commission. The defendants do not challenge the court's finding that Bonnie Bickford knew or should have known that two state police internal affairs investigations found that the allegations against James were unsubstantiated. We agree with the court that the testimony bore some relevance to the purpose of the hearing and was, therefore, absolutely privileged. Because Bonnie Bickford's testimony was privileged, the plaintiffs cannot establish a continuing course of conduct that bars the application of the statute of limitations to their claims. That is, no actionable conduct occurred within the applicable statute of limitations, and the continuing course of conduct doctrine, therefore, cannot be applied to allow recovery for conduct outside the statute of limitations.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment of dismissal.

In this opinion the other judges concurred.

[1] In *Simms* v. *Seaman*, 308 Conn. 523, 525 n.1, 69 A.3d 880 (2013), our Supreme Court noted that "[t]he terms 'absolute immunity' and 'litigation privilege' [were] used interchangeably throughout [that] opinion. See, e.g., R. Burke, 'Privileges and Immunities in American Law,' 31 S.D. L. Rev. 1, 2 (1985) (defining 'privilege' as 'a special favor, advantage, recognition or status' and 'immunity' as a 'special exemption from all or some portion of the legal process and its judgment')." "It appears that other cases and treatises also use the term absolute privilege interchangeably with those previously mentioned. See, e.g., *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007) ([t]he effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged statement even if the statement is false and malicious); 53 C.J.S. 166, Libel & Slander: Injurious Falsehood § 112 (2005) ([a]bsolute privilege confers immunity from liability for defamation regardless of motive)." (Internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 719 n.2, 161 A.3d 630 (2017). Regardless of the frequent interchangeability of the terms, we have tried, where possible, to distinguish between the terms "absolute immunity" and "litigation privilege" or "absolute privilege."

[2] In 2007, James retired from the state police force due to injuries he sustained in the line of duty.

[3] The plaintiffs' exhibit 10, an excerpt from the Connecticut Department of Public Safety IA Handbook, provides the following definition: "Unfounded— [t]his disposition shall be made whenever there is sufficient evidence to prove that the complaint or incident is false or not factual and did not occur."

[4] In June, 2008, the plaintiffs obtained a prejudgment remedy against the defendants in advance of commencing a lawsuit against them. The plaintiffs, however, never served process on the defendants, and the matter was dismissed in October, 2011, for failure to prosecute with reasonable diligence.

[5] Following an in camera review of the 2000 investigation report, the commission concluded that the 2000 investigation was thorough, that the record contained no new evidence that supported or confirmed the allegations made by the defendants or attested to the truth or accuracy of the allegations. Because the 2000 investigation report contains uncorroborated allegations that an individual had engaged in criminal activity, it was not subject to disclosure by the commission.

[6] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[7] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained . . . ."

[8] Practice Book § 17-44 provides in relevant part: "In any action . . . any party may move for a summary judgment as to any claim or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial. If a scheduling order has been entered by the court, either party may move for summary judgment as to any claim or defense as a matter of right by the time specified in the scheduling order. . . ."

[9] In February, 2014, counsel for the defendants filed a motion for continuance of oral argument on the motion for summary judgment as counsel for both parties were recovering from surgery. In April, 2014, and again in June, 2014, the plaintiffs filed supplemental memoranda of law in support of their objection to the defendants' motion for summary judgment. In an October 1, 2014 letter that reveals that in May, 2014, the parties participated in mediation before the court, *Martin, J.*, the plaintiffs' counsel requested that Judge Cosgrove hold another status conference concerning a resumption of mediation. *Significantly, the plaintiffs' counsel also stated that the defendants' motion for summary judgment "as to the slander claim is based on a special defense of 'privilege,' although the defendants never filed any such special defense in either their October 7, 2011 answer and special defenses . . . or their amended answer and special defenses dated May 23, 2012."* (Emphasis added.) Judge Cosgrove denied without prejudice the request for a continuance as the case was set down for trial.

[10] On appeal, the plaintiffs articulated two interrelated claims as to absolute privilege. They claim that (1) the court erred in finding that the defendants' "midtrial assertion of, in effect, a motion in limine was a motion to amend, wherein the defendants' counsel attempted to apply an absolute privilege to the introduction of any evidence regarding the defendants' statements at the [commission] hearing in August, 2009" and (2) the "defendants waived any claim of privilege by failing to plead a special defense where the defendants had waived it during the oral argument on the defendants' summary judgment motion in December, 2014, and never sought, even after trial, to move to amend its special defenses to add such a defense."

[11] Specifically, counsel for the defendants stated: "Just to simplify this argument and cut to the chase, it was never a flagship argument in the eyes of the defendants, but more specifically, we concede the point. The defendants did not plead a special defense of privilege, therefore, are not pursuing summary judgment based on any claim of absolute or qualified privilege, and would agree that summary judgment is not appropriate on that ground. Nevertheless, the defendants would argue that summary judgment is appropriate on statute of limitations grounds."

[12] Counsel for the defendants stated: "The internal affairs investigation is a quasi-judicial proceeding. . . . [S]tatements made in such proceedings by witnesses are subject to absolute immunity. This immunity is true whether . . . they are under oath or not under oath, whether they are uttered during the context of the proceedings or in any way leading up to it. Anything stated by the Bickfords in a quasi-judicial proceeding is something for which they have absolute immunity and, as it is something for which they have absolute immunity, there is no relevance in going through it."

[13] The court also found that Bonnie Bickford had no evidence to support her suspicion and accusation.

[14] The defendants wanted the 2007 investigation report to prove that they did not initiate the 2000 investigation.

---